UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KB HOME ORLANDO LLC,

      Plaintiff,

v.

MID-CONTINENT CASUALTY
COMPANY,

      Defendant.

CASE NO. 6:19-cv-01573-RBD-EJK

## PLAINTIFF KB HOME ORLANDO LLC'S MOTION FOR DAMAGES AND PREJUDGMENT INTEREST

Pursuant to the Court's Orders, Docs. 86, 89, Plaintiff KB HOME Orlando LLC ("KBO") files this motion demonstrating the amount of damages and prejudgment interest that it is entitled to recover from Defendant Mid-Continent Casualty Company ("MCC").

## BACKGROUND

KBO builds homes in Florida using various subcontractors. Branco Lath & Stucco, Inc. ("Branco") was a stucco subcontractor that worked for KBO on a number of projects. The relationship, rights, and obligations between KBO and Branco were governed by two substantially identical master subcontracts executed in 2005 and 2007 (the "Subcontracts"). Among other things, the Subcontracts required that Branco obtain general liability insurance naming KBO and its parent company KB HOME—as well as their respective parent, subsidiary, and affiliated companies, and their officers and employees— as additional insureds. As required by the Subcontracts, Branco obtained an insurance policy from MCC (the "Policy"). The Policy required that MCC "pay those sums that the

1

insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies." Doc. 64-11 at 34. And, the Policy imposes on MCC the "duty to defend the insured against any 'suit' seeking [those] damages." *Id.* The Policy specifically names KBO and KB HOME as additional insureds with respect to liability caused by Branco's work. *Id.* at 22.

KBO was a general contractor for the residential development known as Bayberry Lakes (the "Project"). In November 2017, the Bayberry Lakes Homeowners Association, Inc. (the "Association") and the individual owners of 57 homes (the "Homeowners") (collectively, the "Bayberry Plaintiffs") filed a lawsuit against KBO and certain affiliates and employees (the "Bayberry Lawsuit"). The Bayberry Plaintiffs allege that KBO is vicariously liable for negligent and defective stucco construction on the 266 single-family homes in the Project. Branco performed the stucco work on 229 of those homes. KBO notified MCC of the Bayberry Lawsuit and demanded a defense as an additional insured under the Policy. MCC refused.

Abandoned by MCC, KBO assumed its own defense, retaining its longtime Florida counsel, Carlton Fields, P.A. ("Carlton Fields"), as defense counsel in the Bayberry Lawsuit. Carlton Fields has substantial experience in construction and class action litigation in Florida. In addition, having represented KB HOME since 2005, Carlton Fields is well-acquainted with KB HOME's business. Moreover, Carlton Fields has the resources needed to defend against a putative class action lawsuit claiming more than $27 million in damages before any potential claims for interest or attorneys' fees.

Over the next two years, the case was actively litigated.  KBO removed the Bayberry Lawsuit to this District; filed motions to dismiss and/or answers, defenses, and third-party complaints with respect to three amended complaints; engaged in extensive fact and expert discovery, including motions to compel and to exclude expert testimony; successfully obtained a dismissal of the Association's claims for lack of standing; and successfully opposed class certification.  *See* Orders, No. 6:18-cv-72-Orl-41GJK (M.D. Fla.), Docs. 205, 205 (dismissing Association's claims for lack of standing and denying Homeowners' motion for class certification).  After the Bayberry Plaintiffs filed several motions for reconsideration and remand, the court ultimately vacated its dismissal of the Association's claims and remanded the entire case to state court.  *Id.* at Doc. 224.

Once back in state court, the Bayberry Plaintiffs effectively restarted the litigation, not only pursuing all of their original claims, but also seeking to consolidate the Bayberry Lawsuit with several other state court actions.  Facing years of further litigation without an insurer-funded defense, the potential of a substantial adverse judgment, and nominally judgment-proof subcontractors, KBO recently chose to settle the Bayberry Lawsuit.  The settlement was effected through two written settlement agreements—one agreement with the Association and a separate agreement with the 57 Homeowners, including 53 Homeowners whose homes involve Branco's stucco work.  KBO paid the Association settlement on September 22, 2020, and the Homeowner settlement on October 2, 2020.

Over three years of hard-fought litigation, KBO paid a total of $1,145,656.12 in attorneys' fees, expenses, and costs to defend against the Bayberry Lawsuit, $57,500 to settle the Association's claims, and $1,102,500 to settle the 53 Homeowners' claims

3

involving Branco's stucco work, for total damages of $2,305,656.12.  Due to its breach of the Policy, MCC forfeited any right to control the defense and settlement of the Bayberry Lawsuit and is jointly and severally liable for the full amount of KBO's damages arising from that breach.  MCC also is liable for prejudgment interest on KBO's damages totaling $156,561.39 through December 31, 2020, plus an additional $303.84 per day thereafter until a final judgment is entered.[1]

## ARGUMENT

### I.   MCC IS LIABLE FOR $2,305,656.12 IN DAMAGES FOR ITS BREACH OF THE POLICY

The Court has ruled that:  MCC had a duty to defend KBO in the Bayberry Lawsuit; MCC breached its duty by refusing to defend KBO; in doing so, MCC forfeited any right to control KBO's defense; and MCC is jointly and severally liable for damages resulting from its breach.  Doc. 86 at 11-13.  Therefore, MCC is liable for KBO's damages of $2,305,656.12, which damages include attorneys' fees, expenses, and costs KBO was forced to pay to defend against the Bayberry Lawsuit and settlements KBO paid to resolve the Bayberry Lawsuit.

### A.   MCC Is Liable for All Damages Naturally Flowing from Its Breach of the Policy

An insurer "acts at its peril in refusing to defend its insured."  *Caldwell v. Allstate Ins. Co.*, 453 So. 2d 1187, 1191 (Fla. 1st DCA 1984).  Because MCC breached its duty to

---

[1] MCC has filed a notice of intent to appeal the Court's Order.  Doc. 91.  Because damages and prejudgment interest have not yet been determined, and because there is no ongoing defense of the Bayberry Lawsuit due to settlement, the Court's order is neither a final order nor an order that effectively grants an injunction. Therefore, KBO believes that MCC's appeal will be dismissed on jurisdictional grounds.  In an effort to avoid unnecessary expense on both sides, KBO proposed that the parties stipulate to an amount of damages and entry of a final judgment.  MCC has not responded to KBO's proposal.

defend, "it – like any other party who fails to perform its contractual obligations – becomes liable for all damages naturally flowing from the breach." *Carrousel Concessions, Inc. v. Fla. Ins. Guar. Ass'n*, 483 So. 2d 513, 516 (Fla. 3d DCA 1986); *Robinson v. State Farm Fire & Cas. Co.*, 583 So. 2d 1063, 1068 (Fla. 5th DCA 1991) ("the duty to defend is an express contractual undertaking, the breach of which subjects the insurer to pay all damages that foreseeably flow from the breach"). "[T]here is no threshold question of 'good faith' vs. 'bad faith' . . . . [because MCC] exercised no faith at all. It simply wrongfully refused to comply with its contract to provide a defense . . . . If [MCC's] breach . . . caused foreseeable damages to . . . [KBO] . . . [MCC] should be held liable." *Thomas v. W. World Ins. Co.*, 343 So. 2d 1298, 1304 (Fla. 2d DCA 1977).

"The damages incurred by [KBO] in settling or litigating the case are not limited solely to attorney's fees," but also include "the amount of any collateral damages that resulted from the breach." *MCO Envtl., Inc. v. Agric. Excess & Surplus Ins. Co.*, 689 So. 2d 1114, 1116 (Fla. 3d DCA 1997); *Morette Co. v. Southern-Owners Ins. Co.*, 301 F. Supp. 3d 1175, 1187-88 (N.D. Fla. 2017) (same); *see Robinson*, 583 So. 2d at 1068 (damages include "a judgment against the insured in excess of policy limits, attorneys['] fees and other expenses"); *St. Paul Fire & Marine Ins. Co. v. Thomas*, 273 So. 2d 117, 121 (Fla. 4th DCA 1973) (insurer liable for excess judgment as damages flowing from breach of duty to defend); *Nova Cas. Co. v. OneBeacon Am. Ins. Co.*, 603 F. App'x 898, 903-04 (11th Cir. 2015) (insurer liable for settlement up to policy limits as damages for breach of duty to defend in subrogation action by excess insurer); *U.S. Auto. Ass'n v. Hartford Ins. Co.*, 468 So. 2d 545, 547 (Fla. 5th DCA 1985) (same); *see also W. World*, 343 So. 2d at 1303-04

(damages may include excess judgments); *Caldwell*, 453 So. 2d at 1190-91 (same).[2] Moreover, the amounts incurred by KBO to defend against the Bayberry Lawsuit are not "attorney's fees in usual sense, but rather constitute[] compensation for foreseeable consequences of [MCC's] breach of contract." *Carrousel*, 483 So. 2d at 516 (citation omitted); *see BellSouth Telecomms., Inc. v. Church & Tower of Fla., Inc.*, 930 So. 2d 668, 670-71 (Fla. 3d DCA 2006) (when insurer wrongfully refuses to defend, "the insured will be entitled to full reimbursement of the insured's litigation costs").

Here, the damages naturally flowing MCC's breach of its duty to defend KBO include:  (1) attorneys' fees, expenses, and costs paid to Carlton Fields to defend against the Bayberry Lawsuit; (2) costs and expenses incurred by KBO in the Bayberry Lawsuit and paid directly to a litigation vendor and expert; and (3) amounts that KBO was forced to pay to settle the Bayberry Lawsuit after being abandoned by MCC.

## 1.    Attorneys' Fees, Expenses, and Costs Paid to Carlton Fields

Carlton Fields was first retained by KB HOME in 2005 and has handled more than 1,500 cases for KB HOME and its affiliates.  Due to this longstanding relationship, KB HOME has negotiated significantly reduced hourly rates, with discounts of as much as 50% off of Carlton Fields' current standard rates.  KB HOME also has negotiated an additional 5% courtesy discount that applies to all invoiced attorneys' fees (on top of the already-

---

[2]  *Cf. Manor House, LLC v. Citizens Prop. Ins. Corp.*, 277 So. 3d 658, 661 (Fla. 5th DCA 2019) ("the insured is entitled to recover more than the pecuniary loss involved in the balance of the payments due under the policy in consequential damages"); *T.D.S. Inc. v. Shelby Mut. Ins. Co.*, 760 F.2d 1520, 1531-32 (11th Cir. 1985) (affirming jury verdict that insurer was liable for special damages but finding amount excessive); *Harter v. Ohio Sec. Ins. Co.*, No. 5:20-cv-0268, 2020 WL 6384159, at *1 (M.D. Fla. Sept. 1, 2020) (consequential damages may be recoverable for breach of an insurance contract); *Rondolino v. Nw. Mut. Life Ins. Co.*, 788 F. Supp. 553, 555 (M.D. Fla. 1992) (same).

discounted hourly rates). Additionally, KB HOME reimburses Carlton Fields for the full amount of any expenses or costs reflected in Carlton Fields' invoices as disbursements. In connection with the Bayberry Lawsuit, Carlton Fields has issued invoices totaling $1,178,299.23, including $990,089.30 for attorneys' fees and $188,209.93 for expenses and costs. Taking into account the 5% courtesy discount on attorneys' fees, KBO has paid $1,128,781.19 to Carlton Fields, including $940,571.26 for attorneys' fees and $188,209.93 for expenses and costs. A summary reflecting the amounts invoiced by Carlton Fields and paid by KBO is attached hereto as Exhibit 1.[3,4]

2.      Costs and Expenses Paid Directly to Litigation Vendor and Expert

KBO also incurred costs and expenses that are not reflected in Carlton Fields' invoices for the Bayberry Lawsuit. U.S. Legal Support ("U.S. Legal") issued invoices directly to KBO for transcript costs totaling $11,553.51. KB HOME has negotiated a 2% courtesy discount that applies to these costs. Therefore, KBO has paid $11,322.53 to U.S. Legal in connection with the Bayberry Lawsuit. Alta Engineering Company ("Alta") also issued its first invoice directly to KBO for expert services totaling $5,552.40, which was

---

[3]   The amounts in both this motion and Exhibit 1 reflect attorneys' fees, expenses, and costs incurred from the beginning of the Bayberry Lawsuit through October 31, 2020. These amounts have been reduced to account for (1) litigation support services written off by Carlton Fields ("+"); (2) a small number of time entries inadvertently billed to the incorrect matter ("^"); and (3) certain time entries identified by KBO's fee expert as not advancing KBO's defense against the Bayberry Lawsuit ("*"). *See* Exhibit 1 at 1-2.

[4]   Copies of Carlton Fields' invoices, backup for expenses and costs in those invoices, and proof of KBO's payments to Carlton Fields have been produced to MCC. Due to the volume and sensitive or confidential nature of these documents, they have not been filed as exhibits to this motion. However, KBO will provide copies of these documents to the Court upon request, and the Court appropriately may consider the summary reflected in Exhibit 1 in lieu of the documents themselves. *See* Fed. R. Evid. 1006; *Colon-Fontanez v. San Juan*, 660 F.3d 17, 29-32 (1st Cir. 2011) (approving district court's consideration of summary exhibit); *Smith v. Vestavia Hills Bd. of Educ.*, No. 2:16-cv-0842, 2018 WL 1408537, at *6-7 (N.D. Ala. Mar. 21, 2018) (considering summary exhibits); *Mitchell v. Univ. of La. Sys.*, 154 F. Supp. 3d 364, 380 n. 8 (M.D. La. 2015) (same).

paid by KBO in full.[5]  The $17,105.91 invoiced by U.S. Legal and Alta, and the $16,874.93

paid by KBO for these costs and expenses also are summarized in Exhibit 1.[6]

### 3.    Amounts Paid to Settle the Bayberry Lawsuit

By improperly refusing to defend KBO, MCC abandoned any right to control the

defense and settlement of the Bayberry Lawsuit, leaving KBO to take whatever steps were

necessary to protect itself.  Doc. 86 at 11-13; *see Emp'rs Reinsurance Corp. v. Amphion*

*Holdings Inc.*, 733 So. 2d 588, 590 (Fla. 3d DCA 1999) (where insurer refuses to defend,

insured can take necessary steps to protect itself from a claim).  After remand to state court,

the Bayberry Plaintiffs reasserted their putative class action, alleging widespread damage

to 266 homes.  In court proceedings, the Bayberry Plaintiffs' counsel had alleged that

damages owed to the putative class exceeded $27 million, not including interest or

attorneys' fees.  Even if KBO were to again obtain dismissal of the Association's claims

and defeat class certification in state court (as it had done in federal court), KBO still would

have faced an estimated $5-6 million in claims asserted by the 57 Homeowners.

Considering this exposure, and potentially facing years of additional litigation, KBO

reasonably determined that the best course of action was to settle the Bayberry Lawsuit.

Under the agreements negotiated between KBO and the Bayberry Plaintiffs' counsel, KBO

---

[5]  Subsequent Alta invoices were issued to Carlton Fields rather than directly to KBO and are therefore included in Carlton Fields' invoices.

[6]  Copies of U.S. Legal's and Alta's invoices and proof of KBO's payments to U.S. Legal and Alta have been produced to MCC and will be provided to the Court upon request.

paid $57,500 to the Association and $1,102,500 to the 53 Homeowners on whose homes Branco performed stucco work. These settlement amounts are summarized in Exhibit 1.[7]

Therefore, as set forth above and reflected in Exhibit 1, MCC is liable for a total of $2,305,656.12 in damages naturally flowing from its breach of the Policy.

### B.    MCC Has No Basis to Challenge KBO's Damages

MCC's duty to defend KBO was an express contractual undertaking that MCC ignored at its own peril. *Robinson*, 583 So. 2d at 1068; *Caldwell*, 453 So. 2d at 1191. The Policy required that MCC "pay those sums that the insured becomes legally obligated to pay as damages" and to "defend the insured against any 'suit' seeking [those] damages." Doc. 64-11 at 34. The Policy does not specifically address the attorneys' fees incurred to defend an insured because it contemplates that MCC will appoint defense counsel and provide a complete defense to its insureds. *See id.* at 34, 40 ("We will pay, with respect to . . . any 'suit' against an insured we defend . . . [a]ll expenses we incur."). By breaching its contractual obligations, MCC not only forfeited control over KBO's defense, but also became liable for all damages naturally flowing from its breach. Doc. 86 at 11-13; *Carrousel*, 483 So. 2d at 516; *Robinson*, 583 So. 2d at 1068. This includes all amounts actually paid by KBO to defend and settle the Bayberry Lawsuit. *See, e.g.*, *BellSouth*, 930 So. 2d at 670-71; *MCO Envtl.*, 689 So. 2d at 1116; *Morette*, 301 F. Supp. 3d at 1186-87; *Nova*, 603 F. App'x at 903-04; *U.S. Auto*, 468 So. 2d at 547.

---

[7] Copies of these settlements and proof of KBO's payments have been produced to MCC. Because the settlement agreements include confidentiality provisions, they have not been filed as exhibits to this motion. However, KBO will provide copies of these documents to the Court upon request.

9

### 1.    KBO's Attorneys' Fees Are Presumptively Reasonable

KBO anticipates that MCC will complain about the hourly rates charged by Carlton Fields, nitpick individual time entries, or second-guess decisions KBO made in its defense staffing or strategy.  Where, as here, an insurer abandons its insured, such a hindsight "reasonableness" analysis is neither required nor appropriate.

MCC had a "duty to defend" KBO; this contractual obligation was not limited to the reimbursement of reasonable attorneys' fees. *See* Doc. 64-11 at 22, 34.  Because MCC breached its duty to defend KBO, the attorneys' fees that KBO paid to Carlton Fields are damages naturally flowing from MCC's breach—not an award of attorneys' fees in the usual sense. *See Carrousel*, 483 So. 2d at 516; *BellSouth*, 930 So. 2d at 670-71.  Moreover, KBO's attorneys' fees "are presumed to be reasonable" because they were actually paid by KBO. *Zurich Am. Ins. Co. v. Southern-Owners Ins. Co.*, 314 F. Supp. 3d 1284, 1308 (M.D. Fla. 2018), vacated pursuant to settlement, 2020 WL 1884708 (Jan. 9, 2020); *see Venture Inv. Props., LLC v. Scottsdale Ins. Co.*, No. 3:14-cv-1536, 2017 WL 3822101, at *12 (M.D. Fla. Aug. 8, 2017) (payment of fees is prima facie evidence of reasonableness), adopted, 2017 WL 3732006 (Aug. 30, 2017); *Travelers Cas. & Sur. Co. of Am. v. Grace & Naeem Uddin, Inc.*, No. 08-61868, 2009 WL 6066973, at *1-2 (S.D. Fla. Dec. 1, 2009) (same).[8]

---

[8]  *See also Travelers Prop. Cas. Co. of Am. v. Amerisure Ins. Co.*, 161 F. Supp. 3d 1133, 1138-39 (N.D. Fla. 2015) (insurer that refuses to defend cannot question strategic decisions of the defense actually provided, e.g., reducing liability by pursuing third-party claims); *Oldenberg Grp. Inc. v. Frontier-Kemper Constructors, Inc.*, 597 F. Supp. 32d 842, 848 (E.D. Wis. 2009) (attorneys' fees actually paid are presumptively reasonable and party that refused to defend cannot complain that defense was less efficient than what it would have provided); *cf. Alticor, Inc. v. Nat'l Union Fire Ins. Co. of Pa.*, 345 F. App'x 995, 999 (6th Cir. 2009) ("When an insurance company is 'vigorously denying that it [has] any duty to defend,' the insured has 'an incentive to minimize its legal expenses (for it might not be able to shift them).'"); *Taco Bell Corp. v. Cont'l Cas. Co.*, 388 F.3d 1069, 1076-77 (7th Cir. 2004) ("where there are market incentives to economize, there is no occasion for a painstaking judicial review").

Therefore, the amounts incurred by KBO to defend and settle the Bayberry Lawsuit are presumptively reasonable, and MCC is liable for the full amount of KBO's damages.

Even if reasonableness were at issue, the lodestar analysis used in the fee shifting context does not apply. Under Florida law, when attorneys' fees are claimed as damages for breach of contract—as they are here—the only question is "whether the fees, in the aggregate, are commercially reasonable." *Developers Sur. & Indem. Co. v. Lewis Walker Roofing, Inc.*, No. 3:15-cv-0655, 2016 WL 7116014, at *9 (M.D. Fla. July 25, 2016), adopted in relevant part, 2016 WL 5349511, at *2 (Sept. 26, 2016); *Stabinski, Funt & De Oliveira, P.A. v. Law Offices of Frank H. Alvarez*, 490 So. 2d 159, 160 (Fla. 3d DCA 1986) (lodestar analysis only applies when fees are ancillary to claims at issue, e.g., pursuant to fee-shifting statute). In other words, the Court need only consider whether the amounts incurred by KBO were "fees that commercial parties would have incurred and paid knowing that they had to cover the outlay themselves." *Developers*, 2016 WL 7116014, at *9 (quotation omitted); *Venture*, 2017 WL 3822101, at *12 (same).

Once MCC breached its duty to defend, KBO was left to defend itself and paid these amounts with every expectation that it had to cover the outlay itself. As discussed above, Carlton Fields' hourly rates are substantially discounted; the overall rate scale charged to KBO has not increased appreciably since 2007. These already-discounted rates are subject to an additional 5% for all invoiced attorneys' fees. This is further supported by the expert report of Michael Gay, attached hereto as Exhibit 2. Based on the work performed by Carlton Fields in the Bayberry Lawsuit, Mr. Gay estimated a range of reasonable attorneys' fees (without expenses and costs) between $1.27 and $1.69 million—

11

approximately $330,000 to $750,000 *more* than that amounts actually paid by KBO. *See* Exhibit 1 at 2; Exhibit 2 at 12 (¶ 42). With respect to the settlements, KBO paid $1,160,000 to resolve claims potentially in excess of $27 million, while at the same time avoiding years of expensive litigation. In short, there is no legitimate question that the amounts incurred by KBO to defend and settle the Bayberry Lawsuit are commercially reasonable.

Finally, while Florida law does not require application of the lodestar analysis to KBO's damages, doing so only further reveals that the attorneys' fees paid by KBO were reasonable. Taking into account the substantial discounts, the fixed hourly rates for the duration of the Bayberry Lawsuit, and the experience of the attorneys and non-attorney professionals involved, Mr. Gay opines that the rates charged by Carlton Fields are at or below the reasonable hourly rate customarily charged in Central Florida. Exhibit 2 at 12-13 (¶¶ 43-44). Mr. Gay also conducted a detailed review of Carlton Fields' invoices and the descriptions of work therein. As a result of that review, Mr. Gay identified 42.5 hours ($13,767.80 invoiced by Carlton Fields and $13,079.41 paid by KBO) that did not advance KBO's defense against the Bayberry Lawsuit even though they were appropriately billed to KBO. *See id.* at 13-19 (¶¶ 45-49). *KBO has not included these fees in the $2,305,656.12 claimed against MCC. See generally* Exhibit 1. Accordingly, even applying the lodestar analysis, the amounts claimed against MCC reflect "a more than reasonable amount of attorneys' fees." Exhibit 2 at 19 (¶ 50).

> 2.     MCC Is Liable for "Pre-Tender" Fees

KBO expects that MCC will argue it has no liability for amounts incurred prior to February 28, 2018, the date of KBO's letter to MCC providing copies of the complaint and

amended complaint in the Bayberry Lawsuit. However, this argument disregards the facts and is unsupported by Florida law.

Although the Bayberry Lawsuit was not filed until November 2017, the Association and most of the Homeowners previously had served KBO with a notice of claim under Florida Statutes Chapter 558 on July 31, 2017. KBO tendered these claims to Branco's insurers—including MCC—as early as August 29, 2017. Accordingly, MCC was aware of claims involving the Project at least three months before the Bayberry Lawsuit was first filed. Indeed, MCC issued multiple denial letters on October 19, 2017.[9] KBO's February 28, 2018, letter is therefore described as a "Renewed Notice of Claim & Tender" and refers to "our prior letters" notifying MCC of the Homeowners' claims. Doc. 75-7 at 2. Any suggestion that MCC lacked prior notice of these claims is baseless.

Furthermore, under Florida law, an insurer that refuses to provide a defense not only cedes control of the defense to the insured, but also "is required to pay all pre-tender defense fees incurred by [the insured] because [the insurer] was not prejudiced as a matter of law." *Centex Homes v. Builders FirstSource-Fla. LLC*, No. 16-2009-CA-000193, slip op. at 6-7 (Fla. Cir. Ct. Duval Cnty. Feb. 4, 2015) (citing *Nationwide Mut. Fire Ins. Co. v. Beville*, 825 So. 2d 999 (Fla. 4th DCA 2002)). This is the logical and proper rule. The timing of KBO's notice "had no [e]ffect whatever on [MCC's] contractual duty to defend the suit because [MCC] refused an unconditional defense and ceded thereby the defense to [KBO]." *Beville*, 825 So. 2d at 1004. "[I]n any event, the suit had to be defended from the

---

[9]  In connection with its initial disclosures in this case, KBO produced to MCC all of the relevant tender and denial letters in its possession.

13

very outset, and [KBO] did so.  In [its] defense of the lawsuit [KBO] effectively protected the position of both [MCC] and [KBO] as regards the claim." *Id.*  Therefore, KBO is entitled to recover all amounts incurred to defend against the Bayberry Lawsuit.  *See id.*; *BellSouth*, 930 So. 2d at 670-71 ("the insured will be entitled to full reimbursement of the insured's litigation costs").

MCC may attempt to support its argument by citing *EmbroidMe.com, Inc. v. Travelers Property Casualty Company of America*, 845 F.3d 1099 (11th Cir. 2017). However, *EmbroidMe* involves distinctly different circumstances.  Specifically, unlike MCC, the insurer chose to honor its contractual obligations and *agreed to defend* its insured. *Id.* at 1103.  Therefore, the only question was whether that defending insurer was required to reimburse more than $400,000 in legal expenses incurred during the *18 months* that the named insured waited before deciding to provide notice of the claim. *Id.* at 1102-03.  Having agreed to assume the insured's defense, the insurer was "obviously prejudiced" by the substantial delay and thus not required to reimburse pre-tender fees. *Id.* at 1115-16. Here MCC suffered no prejudice because it was well aware of the Homeowners' claims before the Bayberry Lawsuit was filed and received copies of the Bayberry Lawsuit complaints approximately two months after they were served on KBO.  Doc. 75-7 at 2-3.

Even more importantly, the Eleventh Circuit's entire holding relies on the conclusion that amounts incurred without the insurer's consent were excluded from coverage. *See EmbroidMe*, 845 F.3d at 1112-16.  However, when an insurer refuses to provide a defense, it does not consent to *any* of the amounts incurred.  Whether those amounts were incurred before or after tender is irrelevant.  Accordingly, the reasoning of

14

*EmbroidMe* simply does not apply when an insurer denies its duty to defend.[10]  Any other conclusion would result in MCC obtaining an unwarranted benefit from its breach of the Policy.  Therefore, MCC is liable for the full amount of damages claimed by KBO.

## II.     MCC IS LIABLE FOR $156,561.39 IN PREJUDGMENT INTEREST THROUGH DECEMBER 31, 2020, AND $303.84 PER DAY THEREAFTER

As recognized by the Court, KBO is entitled to recover prejudgment interest on its damages.  Doc. 86 at 13.  Under Florida law, prejudgment interest "compensates the plaintiff for the loss of use of the amount awarded." *Regions Bank v. Maroone Chevrolet, L.L.C.*, 118 So. 3d 251, 257 (Fla. 3d DCA 2013) (citing *Argonaut Ins. Co. v. May Plumbing Co.*, 474 So. 2d 212, 215 (Fla. 1985)); *Ins. Co. of N. Am. v. Lexow*, 937 F.2d 569, 571-72 (11th Cir. 1991) ("the plaintiff is to be made whole by an award of prejudgment interest from the date of the loss").  Accordingly, in insurance coverage actions, prejudgment interest generally begins to accrue on the date payment is due under the policy.  *Regions Bank*, 118 So. 3d at 257; *Owners Ins. Co. v. Hartford Fire Ins. Co.*, 884 So. 2d 382, 383 (Fla. 2d DCA 2004); *Chalfonte Condo. Apartment Ass'n, Inc. v. QBE Ins. Corp.*, 526 F. Supp. 2d 1251, 1261-63 (S.D. Fla. 2007).  "[T]he rate of . . . prejudgment . . . interest is set by statute." *Regions Bank*, 118 So. 3d at 257; Fla. Stat. § 687.01 (absent contractual rate, rate set by § 55.03); Fla Stat. § 55.03(1) (rate set each quarter by Florida's Chief Financial

---

[10]  Moreover, the separate concurrence in the judgment observes that "[t]he Court's construction of Florida's Claims Administration Statute . . . runs counter to the Fourth District's decision in [*Beville*] . . . . Our cases say that we are bound to follow a decision by a Florida intermediate appellate court unless there is a persuasive indication that the Florida Supreme Court would decide the issue differently . . . and I do not think *Beville* is distinguishable." *Id.* at 1116 (Jordan, J., concurring in the judgment).

15

Officer).[11]  The initial rate is determined based on the date payment is due and then "shall

be adjusted annually on January 1 of each year in accordance with the interest rate in effect

on that date."  Fla. Stat. 55.03(3); *Regions Bank*, 118 So. 3d at 258.

The Policy required that MCC provide an immediate and ongoing defense to

KBO—not reimburse costs after they were already incurred.  *See* Doc. 64-11 at 28 (duty

to defend "appl[ies] irrespective of . . . the deductible amount"), 34 (continuing "duty to

defend the insured").  Moreover, by refusing to defend KBO, MCC transferred to KBO the

power to conduct its own defense.  Dec. 86 at 13.  Accordingly, prejudgment interest began

to accrue no later than the dates on which KBO actually paid the damages at issue.  *See,*

*e.g.*, *Lawrence v. ACE Am. Ins. Co.*, No. 8:18-cv-0738, 2019 WL 8273660 (M.D. Fla. Oct.

24, 2019) (awarding prejudgment interest from the date of payment); *Int'l Speedway Corp.*

*v. Racing In-Sites, Ltd.*, No. 6:13-cv-0015, 2014 WL 2894504, at *9 (M.D. Fla. June 26,

2014) (awarding prejudgment interest from the date invoices were issued); *cf. Owners Ins.*,

884 So. 2d at 383 (finding prejudgment interest calculated from date of payment to be

"inadequate").

KBO's calculation of the prejudgment interest owed by MCC is attached hereto as

Exhibit 3.  The initial columns in this spreadsheet reflect the individual components of

KBO's damages and the dates and amounts of KBO's payments.  The remaining columns

reflect the prejudgment interest that will have accrued on the amounts paid by KBO

---

[11] The current and historical judgment interest rates are available at https://www.myfloridacfo.com/division/
AA/LocalGovernments/Current.htm and https://www.myfloridacfo.com/division/AA/LocalGovernments
/Historical.htm.  Florida's Chief Financial Officer already has set the judgment interest rate that will be
effective January 1, 2021.

through December 31, 2020. Each row identifies one or more rates. The first rate is the judgment interest rate in effect on the date that KBO paid that particular cost; where applicable, the interest rates in effect on January 1 of each successive year also are included. *See* Fla. Stat. § 55.03(3) (requiring annual adjustment). The amounts paid by KBO are then multiplied by the relevant rates (using the daily rate as a decimal) and the relevant days of interest in that year to determine the total prejudgment interest that has accrued on each component of KBO's damages. Based on these calculations, KBO is entitled to $156,561.39 in prejudgment interest through December 31, 2020. Exhibit 3 at 3. As of January 1, 2021, the rate of prejudgment interest applicable to all of KBO's damages will be adjusted to 4.81%. *See* Fla. Stat. § 55.03(3). Therefore, KBO is entitled to additional prejudgment interest of $303.84 per day for every day from January 1 until the date of final judgment.[12]

## CONCLUSION

For the reasons stated above, KBO requests that the Court award KBO: (1) $2,305,656.12 in damages naturally flowing from MCC's breach of the Policy; (2) $156,561.39 in prejudgment interest through December 31, 2020; and (3) $303.84 in prejudgment interest per day from December 31, 2020, until a final judgment is entered.

---

[12] This daily prejudgment interest reflects KBO's total damages of $2,305,656.12 multiplied by the daily rate of 0.0131781% (or 0.000131781 as a decimal). If there is no final judgment in this case before December 31, 2021, then the applicable rate will be adjusted again on January 1, 2022.

17

Dated:  December 23, 2020

Respectfully submitted,

*/s/ Eric M. Gold*
Matthew R. Cogburn
Florida Bar No. 0288100
COGBURN LAW FIRM, P.A.
515 W Bay St., Suite 210
Tampa, FL 33606
Telephone:  813-250-3444
Facsimile:  813-229-4133
mcogburn@cogburnlegal.com

Eric M. Gold (admitted *pro hac vice*)
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1200 Seventeenth Street NW
Washington, DC 20036
Telephone:  202-663-8000
Facsimile:  202-663-8007
eric.gold@pillsburylaw.com

*Attorneys for Plaintiff*
*KB HOME Orlando LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing has been electronically filed with the Clerk of Court by using the CM/ECF system on this 23rd day of December, 2020, which will send an electronic notice to all counsel of record.

*/s/ Eric M. Gold*
Attorney

18