# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

KB HOME ORLANDO LLC,

      Plaintiff,

vs.                                  CASE NO. 6:19-cv-01573-RBD-EJK

MID-CONTINENT CASUALTY COMPANY,

      Defendant.           /

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR DAMAGES AND PREJUDGMENT INTEREST & REQUEST FOR ORAL ARGUMENT

Mid-Continent Casualty Company ("MCC") opposes KB HOME Orlando LLC's ("KBO") Motion for Damages and Prejudgment Interest (DE 93.)

## BACKGROUND

This lawsuit concerned MCC's duty to defend KBO in a putative class action lawsuit (the "Bayberry Lawsuit") that concerned KBO, KB HOME Jacksonville, LLC ("KBJ"), KB HOME Gold Coast, LLC ("KBGC"), Gerald Boeneman, George Glance III, Michael Holder, and Joshua Spalten's (collectively, the "KB Defendants") alleged decisions to design, and direct their subcontractors to construct, a residential community in a manner that allegedly violated Florida's Building Code and Florida's Deceptive and Unfair Trade Practices Act. KBO contended that Branco Lath & Stucco, Inc. ("Branco Lath") was a

1024014\307562214.V1

subcontractor on the construction (the "Project"). Thus, KBO sought a defense from MCC pursuant to a policy of insurance that MCC issued to Branco Lath, which was effective for less than three months - from October 11, 2011 through December 14, 2011 (the "Policy"). An endorsement amends the Policy to include KBO as an additional insured, but only with respect to work that Branco Lath performs for KBO. (DE 42-11 at p. 22.)

MCC did not defend KBO and KBO sued MCC. This Court determined that MCC breached a duty to defend KBO and is liable for KBO's damages. (*See* DE 86 at pp. 9, 14 ("[W]ho Branco Lath was working for at the Bayberry Project – KB Gold Coast or KB Orlando – is hotly contested with evidence on both sides. But, *for this dispute*, it doesn't matter. The duty to defend [KBO] depends only upon the *allegations* of the underlying complaint, not the actual facts.").)

KBO now asks the Court to award it $2,305,656.12. Neither the summaries KBO provides in support of this request nor the underlying documents upon which the summaries rely (which have not been provided to the Court) establish that KBO itself has actually paid $2,305,656.12 or that that amount would be a reasonable recovery in this breach of contract lawsuit. The sum KBO seeks to collect appears to correspond to virtually all of the expenses the seven KB Defendants claim they incurred in defending against, and subsequently settling, the Bayberry Lawsuit. Awarding that amount as breach of contract damages

2

would impermissibly place KBO in a better position than it would have been in had MCC not breached.  KBO concedes it is only entitled to recover that which is "commercially reasonable" and that which KBO itself "paid knowing that [it] ha[d] to cover the outlay [itself]." (DE 93 at p. 11.)  Thus, the damage award KBO seeks must be drastically reduced, to the extent one is awarded at all.

## ARGUMENT

### A.    KBO Has Failed To Prove Its Reasonable Damages.

KBO's Motion lacks adequate evidentiary support.  It is based, entirely, upon a table summary that neither identifies *who* made the payments nor discloses any details about them.  (DE 93-1.)  KBO does not identify authority that would support an award of attorneys' fees based upon summaries that omit such fundamental information and the Court cannot simply presume that the amounts KBO lists were reasonably made by KBO itself in furtherance of its own defense in the Bayberry Lawsuit because the actual evidence—which KBO tellingly does not put before the Court—refutes this.

There is no authenticated record evidence, in the form of checks, pay stubs, or otherwise, to support that the attorney fee payments set forth in the table were actually paid.[1]  To the extent payments were made, it appears, based upon KBO's

---

[1] KBO's discovery responses posit that no checks evidencing this payment have been produced because "KBO and its affiliates have retained Carlton Fields in connection with more than 1,500 matters, and all of the checks and associated stubs reflecting payment of amounts incurred in

3

discovery response (*see* n.1, *supra*), prior testimony (*see* DE 72-1 at 149:11-17 (testifying that payments for KBO are made by a separate "single entity that [is] publicly traded")), and the checks produced to MCC evidencing a parent entity's payment of vendor and expert expenses, that the payments in the Bayberry Lawsuit were not made by KBO, but by another entity not a party in this action. It further appears that much of the payments identified were not made on KBO's behalf, but on behalf of KBO's co-defendants, none of whom has been found to be, or claimed in this action to be, an insured under the Policy.  (*See* § B.4, *infra*.)

As set forth in MCC's affirmative defenses (DE 55 at Aff. Defs. 1, 33), KBO cannot recover as damages the fees that were incurred in the representation of the other KB Defendants and KBO lacks standing to recover payments made by an affiliate entity.  (DE 42-11 at p. 34 ("We will have the right and duty to defend *the insured* against any 'suit' seeking those damages.").)  *Cf. Cableview Communs. of Jacksonville, Inc. v. Time Warner Cable Se., LLC*, No. 3:13-cv-306, 2016 U.S. Dist. LEXIS 3551, *36, 41 (M.D. Fla. Jan. 12, 2016) ("[T]he Court agrees that Cableview-

---

the [Bayberry Lawsuit] include amounts incurred in unrelated matters[.]"  (KBO's Objections and Responses to RFPs, attached as **Exhibit A**, at No. 12.)  KBO referred MCC to "a report from Carlton Fields' billing system," but that unauthenticated document does not prove payment and is an inadequate predicate to enable the Court to rely upon DE 93-1 to determine attorney fees. *Compare Travelers Cas. & Sur. Co. of Am. v. Winmark Homes, Inc.*, 518 Fed. Appx. 899 (11th Cir. 2013) (accepting computer printout of fees because it was supported by a verified affidavit). *See, e.g., Godburn v. Adams Tile & Terrazzo, Inc.*, No. 3:14-cv-114, 2017 U.S. Dist. LEXIS 48320 (M.D. Ga. Mar. 31, 2017) (declining to consider charts in connection with motion for damages since they were based upon paystubs that were themselves insufficient to establish damages).

1024014\307562214.V1

Jax does not have standing to recover damages sustained by the other Cableview Entities. . . . Cableview-Jax will only be able to recover the portion of the disputed funds which it can establish are properly allocated to it."); *Titan 5 Holdings, Ltd. v. Majuda Corp.*, No. 13-80130, 2013 U.S. Dist. LEXIS 55016, *6 (S.D. Fla. Apr. 17, 2013) ("A corporation does not have standing to assert claims [or damages] belonging to a related or closely affiliated corporation simply because their businesses are intertwined."); *Canton Plana, Inc. v. Regions Bank, Inc.*, 732 S.E. 2d 449, 454 (Ga. Ct. App. 2012) (similar).

### B.   Any Damage Award Must Be Drastically Reduced.

To the extent the Court determines to award damages even without the requisite proof submitted, numerous significant reductions are necessary.

### 1.   Exclusion of Pre-Tender Fees.

First, the Court should exclude $54,238.83 of attorneys' fees and $421.32 of expenses and costs, as these amounts were incurred prior to KBO's tender to MCC. (DE 42 ¶ 42; DE 55 ¶ 42; DE 93-1 at p. 1.)  KBO argues that this recovery is appropriate since MCC "was well aware of the Homeowners' claims before the Bayberry Lawsuit was filed," as evidenced by KBO's alleged pre-suit tenders and MCC's "multiple denial letters dated October 19, 2017."  (DE 93 at p. 13.)[2]  Yet

---

[2] KBO relies upon *Nationwide Mut. Fire Ins. Co. v. Beville*, 825 So. 2d 999 (Fla. 4th DCA 2002), "the holdings [of which] have subsequently been distinguished and refuted by other courts applying Florida law," *Hanover Ins. Co. v. Anova Food, LLC*, 173 F. Supp. 3d 1008, 1024 (D. Haw. 2016)

1024014\307562214.V1

KBO presents no evidence that it made any tenders to MCC prior to February 28, 2018. Nor has KBO shown that MCC had any notice of any suits or claims against KBO prior to that date. The earlier notices and denials concerned pre-suit claims against *KBJ, not KBO* tendered to MCC by *KBJ, not KBO*. (*See* tender correspondences attached as **Composite Exhibit "B."**)

Regardless, KBO's reliance on *Beville* and focus upon *notice of claims* misperceives the law because MCC's duty to defend is triggered by a "suit," which is defined as "a civil proceeding" or, if entered into with MCC's consent, "any other alternative dispute resolution proceeding." (DE 42-11 at pp. 34, 47.) Any pre-suit fees KBO voluntarily incurred *without* MCC's consent or any fees KBO voluntarily incurred prior to notifying MCC of a "suit" are not covered by the Policy, and are not recoverable as damages for MCC's failure to defend KBO against the Bayberry Lawsuit. *Id.*; *see also Altman Contractors, Inc. v. Crum & Forster Specialty Ins. Co.*, 232 So. 3d 273, 279 (Fla. 2017) (pre-suit defense fees incurred in connection with construction defect claims are not covered under a commercial liability policy unless incurred with the consent of the insurer). *See, e.g. EmbroidMe.com, Inc. v. Travelers Prop. Cas. Co. of Am.*, 845 F.3d 1099, 1106 n.4 (11th Cir. 2017) ("[An insured] could not expect its insurer to reimburse it for

---

(citations omitted), wherein the court found that an insurer with actual notice of its duty to defend a suit had to show prejudice to avoid paying the pre-tender fees the insured incurred in defense of that suit.

6

attorney's fees it unilaterally incurred unless the insured had first obtained Travelers' permission"); *Elan Pharm. Research Corp. v. Employers Ins.*, 144 F. 3d 1372, 1382 (11th Cir. 1998) ("EPRC did not trigger Wausau's duty to defend until it tendered notice of the Pfizer lawsuit on September 11, 1992 and that, as a result, Wausau is not liable for the litigation expenses Elan incurred before that date. Our holding above that Wausau subsequently breached its duty to defend cannot serve to expand the scope of Wausau's liability."); *Am. States Ins. Co. v. Pioneer Elec. Co.*, 85 F. Supp. 2d 1337, 1343 (S.D. Fla. 2000) ("The defense obligation is triggered when the insured tenders the defense of an action against it which is potentially within the policy coverage.").

Since KBO did not afford MCC notice of any suit against KBO until February 28, 2018, allowing KBO to recover fees prior to that date would not comport with the purpose of breach-of-contract damages, which is to award only the amount of "monetary damages that will put [the non-breaching party] in the same position it would have been had the other party not breached the contract." *Mid-Continent Cas. Co. v. Adams Homes of NW Fla., Inc.*, 809 Fed. App'x 719, 722 (11th Cir. 2020); *Allapattah Servs. v. Exxon Corp.*, 61 F. Supp. 2d 1326, 1328 (S.D. Fla. 1999). *See also Gov't Employees Ins. Co. v. KJ Chiropractic Ctr., LLC*, No. 6:12-cv-1138, 2017 U.S. Dist. LEXIS 228374, *8 (M.D. Fla. Aug. 22, 2017) (the law

7

"disfavors" a compensatory award that would place a litigant "in a better economic position than it would otherwise have occupied[.]").

## 2.   Exclusion of Post-Exhaustion Fees.

Second, the Court should exclude $98,155.26 of attorneys' fees and $9,062.04 of expenses and costs, as these amounts were incurred after April 10, 2020. (DE 91-3.)  The Policy provides that MCC's "right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements."   (DE 42-11 at p. 34.)  Since "an insurer's duty to defend arises solely from the language of the insurance contract," *Godur v. Travelers Indem. Co.*, 567 So. 2d 1028, 1030 (Fla. 3d DCA 1990), Florida law is clear that an insurer terminates its defense obligations through exhaustion of policy limits. *Id.  See also KB Home Jacksonville LLC v. Liberty Mut. Fire Ins. Co.*, No. 3:18-cv-371, 2019 U.S. Dist. LEXIS 151230, *12 (M.D. Fla. Sept. 5, 2019).  On April 10, 2020, after a global mediation with a neutral mediator, MCC "used up the applicable limit of insurance in the payment of judgments or settlements," thereby exhausting the Policy. (*See generally* Declaration, attached as **Exhibit "C."**) Had MCC defended KBO in the Bayberry Lawsuit, it would have withdrawn the defense on April 10, 2020, and KBO cannot recover fees incurred after that date as damages.  *Cf. Adams Homes*, 809 Fed. App'x at 722; *KJ Chiropractic*, 2017 U.S. LEXIS 228374, *8; *Allapattah*, 61 F. Supp. 2d at 1328.

8

### 3.   30% Reduction Based Upon Billing Improprieties.

KBO claims that the entirety of the amounts set forth in its table summary are "presumptively reasonable" for purposes of assessing damages against MCC for not accepting KBO's defense because the amounts were incurred and "actually paid by KBO." (DE 93 at p. 10). KBO is not entitled to any such presumption because, as noted *supra*, KBO itself did not actually pay these amounts (and the record evidence does not definitively establish that anyone else did either). "Without establishment of actual payment of the amounts claimed and with mere summary assertions that the amounts are reasonable, [KBO] has not established its burden of showing reasonableness." *Developers Sur. & Indem. Co. v. Lewis Walker Roofing,* No: 3:15-cv-655, 2016 U.S. Dist. LEXIS 131533, *31 (M.D. Fla. July 25, 2016), *reversed in part on other grounds*, 2016 U.S. Dist. LEXIS 131269 (M.D. Fla. Sept. 26, 2016). Further, the pervasive billing improprieties in the Bayberry Lawsuit invoices, as further discussed *infra*, and the absence of any evidence that the bills were reviewed in any meaningful way, mitigate heavily against any presumption of reasonableness.[3]   *See, e.g.*, *Lewis Walker*, 2017 U.S. Dist. LEXIS 82557, * 12 (M.D. Fla. May 31, 2017) (noting the two-step process that was employed for reviewing invoices prior to payment as part of analysis to

---

[3] As discussed below and in Mr. Zinober's Expert Opinion, the most prevalent timekeeper charged nearly $100,000.00 based upon the same *identical* vague narrative, which he entered for over a year! That alone should rebut any otherwise existing presumption of reasonableness.

1024014\307562214.V1

determine whether payments were commercially reasonable); *Travelers Cas. & Sur. Co. of Am. v. Grace & Naeem Uddin, Inc.*, No. 08-61868, 2009 U.S. Dist. LEXIS 109602, \*6-11 (S.D. Fla. Nov. 24, 2009) (holding that the concept of reasonableness must be applied to any claim for attorney fees since, absent such consideration, one "would have no incentive to police its attorneys' activities and charges, since it could simply dump any and all charges billed onto the indemnitor.  Such a result would make no sense.").  To be sure, the presumption of reasonableness upon which KBO asks the Court to rely carries minimal weight when "the item of damages that Plaintiff seeks to recover is attorneys' fees." *E.g.*, *Wilmington Trust, N.A. v. Estate of Gonzalez*, No. 15-23370, 2017 U.S. Dist. LEXIS 226072, \*9-10 (S.D. Fla. Sept. 15, 2017).  Since "the court is itself an expert on the question," it is "appropriate to apply the customary reasonableness standard for purposes of assessing the proper measure of this item of damages."  *Id.* (declining to find $775,240.84 presumptively reasonable simply because it was paid to counsel).

This is the reason that the Court conducts its own review to "prune out those hours that are excessive, redundant, or otherwise unnecessary." *Capitol Specialty Ins. Co. v. Ortiz*, No. 17-23329, 2019 U.S. Dist. LEXIS 7825, \*17 (S.D. Fla. Jan. 15, 2019) (quoting *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999)).  Although KBO has not made its bills available to the Court, there are numerous commercially and objectively unreasonable billing practices that pervade the

10

Bayberry Lawsuit invoices, including extraordinary volumes of completely duplicative billing entries for months on end, entries reflecting excessive interoffice communications without differentiation, entries reflecting enormous amounts of vague block-billing, and entries reflecting grossly excessive time devoted to tasks (such as 93.5 hours charged by just one of the attorneys to prepare a 25-page *Daubert* motion, which exceeded KBO's own expert's opinion as to what would be reasonable)  (*See generally* Expert Opinion of Fredric S. Zinober, attached as **Exhibit "D.")**  In light of all this, the Court is authorized to "apply an across-the-board reduction" and doing so is "preferable so as to avoid the 'pick and shovel work' of pouring through voluminous billing records." *Church of Our Savior v. City of Jacksonville Bch.*, 108 F. Supp. 3d 1259, 1274 (M.D. Fla. 2015).  A 30% reduction is appropriate given the pervasiveness of the billing improprieties.  (*Id.*)[4]

### 4.    Exclusion of Co-Defendants' Fees.

Finally, the Court must exclude the attorneys' fees, expenses, and costs

---

[4] *See also Gonzalez*, 2017 U.S. Dist. LEXIS 226072 at *9-11 ("[C]ontrary to Plaintiff's position, it is not entitled to recover the full amount of attorneys' fees it spent . . . [A] reduction of one-third to Plaintiff's attorneys' fees claim would render the claim reasonable."); *Zendejas v. Redman*, No. 15-81229, 2017 U.S. Dist. LEXIS 114839, *17 (S.D. Fla. July 24, 2017) (reducing fee award by 40% because of "the deficiencies in the billing entries and the excessive nature of time billed"); *Hamilton v. Sheridan Healthcare, Inc.*, No. 13-62008, 2015 U.S. Dist. LEXIS 193773, *27 (S.D. Fla. Dec. 23, 2015) (applying a 40% reduction); *Watts v. Club Madonna, Inc.*, No. 17-24666, 2019 U.S. Dist. LEXIS 25180, *11-12 (S.D. Fla. Feb. 14, 2019) (reducing the hours by 40%); *Zelaya v. Batholomai*, No. 02-22552, 2008 U.S. Dist. LEXIS 130531, *24 (S.D. Fla. Feb. 12 2008) (reducing conferences hours between 30% and 45%).

1024014\307562214.V1

that were incurred in defense of the other KB Defendants.   KBO alleges it incurred attorneys' fees in the amount of $940,571.26 ($551,724.02 after deducting the pre-tender and post-exhaustion fees and applying the 30% reduction), $188,209.93 in attorneys' expenses and costs ($178,726.57 after deducting the pre-tender and post-exhaustion amounts), and $16,874.93 in vendor and expert expenses to defend itself against the Bayberry Lawsuit.  (DE 93 at pp. 6-7, DE 93-1.)  However, these amounts could not reasonably reflect the amount KBO would have "paid knowing that [it] had to cover the outlay [itself]" because these amounts pertain to Carlton Fields' representation of all seven KBO Defendants in the Bayberry Lawsuit.  (*See* Ex. D at pp. 17-20.)  The invoices are all captioned "*Re: KB HOME Orlando, LLC, KB HOME Jacksonville, LLC, KB HOME Gold Coast LLC, Bayberry Lakes Homeowners, Class Representation*," *id.*, and KBO seeks reimbursement of amounts Carlton Fields charged in connection with that broad representation, such as Invoice 120225053 (deposition of Michael Holder, one of KBO's co-defendants alleged to be KBGC's qualifying agent) and Invoice 120233529 (deposition of a homeowner with claims against KBGC, not KBO, and whose home was built and sold by KBGC, not KBO - *see* DE 42-10 at Exs. A-B).

Since KBO made no effort to identify its share of the litigation expenses,[5]

---

[5] KBO suggests that ~$13,000 in fees were charged by Carlton Fields but did "not advance[e] KBO's defense against the Bayberry Lawsuit."  (DE 93 at p. 12, 93-1.)  This number is inconsistent with KBO's expert's opinion regarding the reasonable time to prepare *Daubert*

1024014\307562214.V1

MCC retained an expert to undertake the necessary analysis for the Court's benefit and approximate KBO's commercially-reasonable recovery. This exercise, while difficult because the invoices are laden with vague, duplicative block-billing narratives that refer indiscriminately to the KB Defendants as "KB HOME," thus obscuring what work was actually performed and for whom or why, is necessary to restore KBO to the position it would have been in had MCC defended KBO and to avoid awarding a windfall. If the Court awards any damages, only a fraction of the damages sought are actually recoverable. (*See generally* Ex. D.) The Court may, indeed must, make across-the-board reductions to account for the fact that only KBO's defense fees, and not its co-defendants', are awardable. *See, e.g.*, *Cableview*, 2016 U.S. Dist. LEXIS 3551, at *41 ("Cableview-Jax will only be able to recover the . . . funds which it can establish are properly allocated to it."); *Polanco v. Igor & Co.*, No. 18-cv-60932, 2019 U.S. Dist. LEXIS 128735, *20 (S.D. Fla. July 31, 2019) (reducing invoices by 20% in part to "exclude tasks performed relating to Defendants other than Defendant Out of Time Towing[.]") *Wickboldt v. Mass. Mut. Life Ins. Co.*, No. 6:17-cv-2208, 2020 U.S. Dist. LEXIS 230708, *7 (M.D. Fla. Dec. 7, 2020) (50% cut appropriate where it was

---

motions (*see* DE 93-2 ¶ 40; Ex. D at pp. 16-17), and, to the extent KBO claims it incurred $940,571.26 in defense of the Bayberry Lawsuit, while its six co-defendants collectively incurred ~$13,000, the Court should reject that absurd suggestion. Mr. Gay's opinion that the $940,571.26 sum is less than the reasonable range he would have expected is based on the allegations and evidence against *all seven KB Defendants*. (DE 93 at pp. 11-12; DE 93-2 at ¶ 42.) It appears that, by extrapolation, *KBO's* reasonable fees would be a fraction of the sums he identified.

1024014\307562214.V1

"difficult, if not impossible, to determine what portion of the work was done" for count subject to fees versus count not subject to fees).

MCC's expert proposes three options: (1) reduce the sums by six-sevenths to reflect that only one of the seven KB Defendants is MCC's insured; (2) reduce the sums by two-thirds since the invoices facially refer to the representation of KBO, KBGC, and KBJ; or (3) reduce the sums by 46.55% to reflect that, according to the Bayberry Lawsuit pleadings which control MCC's defense obligations, KBO was only involved in the development and construction of 147 of the 275 homes at issue.  (*See* DE 42-10 at Ex. B.)  These approaches would result in awards of, respectively: (1) $78,817.72 in attorneys' fees, $25,532.37 in attorneys' expenses, and $2,410.70 in vendor/expert costs; (2) $183,908.00 in attorneys' fees, $59,575.52 in attorneys' expenses, and $5,624.97 in vendor/expert costs; or (3) $294,896.49 in attorneys' fees, $95,529.35 in attorneys' expenses, and $9,019.65 in vendor/expert costs.[6]

### C.  KBO cannot recover Settlement payments.

KBO also asks the Court to award it a $57,500.00 payment made on September 22, 2020 and a $1,102,500.00 payment made on October 2, 2020 to

---

[6] These numbers account for MCC's proposed reduction of $161,877.45, which eliminated 100% of the pre-tender and post-exhaustion attorneys' fees, expenses, and costs (*see* §§ B.1-2, *supra*), and that reduction is consistent with Mr. Zinober's opinion that the Court can also consider these legal issues in arriving at the amount of KBO's reasonable fee award.  (*See* Ex. D at p. 20.)

resolve claims involving 53 homes in the Project upon which KBO alleges Branco Lath performed work.  (DE 93 at pp. 8-9 & DE 93-1.)  This recovery is unavailable because a corporate parent of KBO made these payments, not KBO (**Composite Exhibit "E"** (settlement checks issued by KBO parent); **Composite Exhibit "F"** (settlement agreements); *see* § A, *supra*) and because the Policy was exhausted prior to payment. (Ex. D; *see* § B.2., *supra*.)

### 1.    Indemnity is not at issue in this action.

Proof of payment and exhaustion aside, KBO's argument that settlement payments are recoverable because they "naturally flow[ ]" from MCC's failure to defend (DE 93 at p. 6)[7] ignores the "distinction between the duty to defend and duty to indemnify."  *See, e.g.*, *García-Navarro v. Hogar La Bella Unión, Inc.*, No. 3:17-cv-01271, 2020 U.S. Dist. LEXIS 224117, *62-63 (D. P.R. Nov. 30, 2020) (explaining "settlements entered into after an insurer breaches its duty to defend have a limited effect" and cautioning against awarding damages that would expand an insurer's liability beyond the terms of the insurance contract).  "Under Florida law, an insurer's duty to defend is separate and distinct from its duty to indemnify," *AIX Specialty Ins. Co. v. Night Indus.*, No. 6:20-cv-225, 2020 U.S. Dist.

---

[7] The doctrine to which KBO refers, which has more weight outside the context of insurance policies, also requires that the damages must "reasonably be said to have been contemplated by the parties at the time the contract was entered." *E.g.*, *Veritas Personnel Servs. v. ADP Total Source, Inc.*, No. 1:19-cv-22435, 2020 U.S. Dist. LEXIS 241930, *32 (S.D. Fla. Oct. 30, 2020).  MCC and Branco Lath clearly did not contemplate that MCC would ever pay settlement payments for uncovered claims.  No one alleges otherwise.

1024014\307562214.V1

LEXIS 248130, *9 n.5 (M.D. Fla. Dec. 9, 2020) (citing *Mid-Continent Cas. Co. v. Am. Pride Bldg. Co., LLC*, 601 F.3d 1143, 1148-49 (11th Cir. 2010)), and an insured may request declaratory judgment for either or both duty. *Underwriters at Lloyds London v. STD Enters.*, 395 F. Supp. 2d 1142, 1145 (M.D. Fla. 2005). This Court found MCC's duty to defend, which implicates payment for attorneys' fees and expenses, is controlled by *the allegations* in the complaint, but its duty to indemnify, which implicates payment of settlements, is controlled by *the actual facts*. (*See* DE 86 at pp. 6-7, 10.)

"[I]f the facts show that the insured's liability stems from a claim for which no coverage is provided under the policy, the insurer owes no duty of indemnification. *This premise holds true even where the insured's liability was arrived at through settlement of the action against the insured[.]*"  *Mid-Continent Cas. Co. v. Royal Crane, LLC*, 169 So. 3d 174, 181 (Fla. 4th DCA 2015) (citing *Travelers Indem. Co. of Ill. V. Royal Oak Enters., Inc.*, 344 F. Supp. 2d 1357, 1366 n.3 (M.D. Fla. 2004)) (emphasis added). *See also Bradfield v. Mid-Continent Cas. Co.*, 143 F. Supp. 3d 1215, 1231 n.17 (M.D. Fla. 2015) (similar); *Kopelowitz v. Home Ins. Co.*, 977 F. Supp. 1179, 1186 n.3 (S.D. Fla. 1997) ("Florida law clear" that insurer who breaches duty to defend not liable for insured's settlement payment unless claims were actually covered); *Zurich Am. Ins. Co. v. Southern-Owners Ins. Co.*, 248 F. Supp. 3d 1268 (M.D. Fla. 2017) (settlement payments are "indemnity payments"); *Pa.*

*Lumbermens Mut. Ins. Co. v. Ind. Lumbermens Mut. Ins. Co.*, 43 So. 3d 182 (Fla. 4th DCA 2010) (settlement payments are "indemnity costs"). *See, e.g., J.B.D. Constr., Inc. v. Mid-Continent Cas. Co.*, 571 Fed. Appx. 918, 927-29 (11th Cir. 2014) (even where insurer breaches duty to defend, insurer has no duty to reimburse insured for value of settlement unless insurer has duty to indemnify the settled claims).[8] Notwithstanding KBO's bizarre and factually unsupported contention that its parent was "forced to pay to settle the Bayberry Lawsuit" (DE 93 at p. 6), the settlement of a claim for which a duty to defend has attached "does not, by itself, obligate the insurer to pay." *Trovillion Constr. & Dev., Inc. v. Mid-Continent Cas. Co.*, No. 6:12-cv-914, 2014 U.S. Dist. LEXIS 6265, *23 (M.D. Fla. Jan. 17, 2014).

This lawsuit was about MCC's duty to defend. (*See generally* DE 42.) Since KBO did not seek to resolve indemnity, the Court, in awarding KBO summary judgment, did not consider the mountain of evidence showing that KBO is not in fact entitled to coverage under the Policy, reasoning that "*for this dispute*, it doesn't matter." (DE 86 at pp. 9-10.) KBO does not cite a single case that would

---

[8] *See also Crossmann Cmtys. of N.C. v. Harleysville Mut. Ins. Co.*, No. 4:09-cv-1379, 2013 U.S. Dist. LEXIS 138941, *51 (D. S.C. Sept. 27, 2013) (in a suit regarding the duty to defend and indemnify, homebuilder's decision to settle construction defect lawsuit that insurer erroneously refused to defend implicated the insurer's indemnity obligations rather than its defense obligations, such that insurer "would only be liable to indemnify Beazer Homes for that portion of the settlement that Beazer Homes paid to settle damages for which coverage is provided under the Harleysville Policies."); *Cont'l Cas. Co. v. Soco W., Inc.*, No. 09-0413, 2010 U.S. Dist. LEXIS 150564, *14-20 (C.D. Cal. 2010) (finding no duty to indemnify for money paid to settle a lawsuit).

17

permit awarding settlement payments in this duty-to-defend lawsuit.[9]

## 2.    KBO did not establish coverage for the settlement payments.

Were indemnity at issue, KBO would have to prove that the settlement payments "represent[ ] damages that fall within the coverage provisions of [MCC's] insurance policy." *QBE Specialty Ins. Co. v. Scrap, Inc.*, 806 Fed. App'x 692, 695 (11th Cir. 2020). KBO has failed to do so. "Under Florida law, the party claiming insurance coverage has the initial burden to show that a settlement or judgment represents damages that fall within the coverage provisions of the insurance policy." *Id.* "Unless the insured can demonstrate that it suffered a covered loss under the policy, the insurer has no duty to indemnify whatsoever." *Northland Cas. Co. v. HBE Corp.*, 160 F. Supp. 2d 1348, 1360 (M.D. Fla. 2001). KBO would also have the burden to allocate the settlement payments between covered and uncovered damages. Once again, KBO has failed to do so, and its failure is fatal to its request for payment of a settlement based upon an insurance policy. *See Horn v. Liberty Ins. Underwriters, Inc.*, 391 F. Supp. 3d 1157, 1164-65 (S.D. Fla. 2019); *Trovillion*, 2014 U.S. Dist. LEXIS 6265 at *23. *See, e.g., Keller Indus. v. Empl. Mut. Liab. Ins. Co.*, 429 So. 2d 779, 780 (Fla. 3d DCA 1983) (affirming denial of damages based on settlement payments because insured "had the burden, which

---

[9] In the decisions KBO cites, coverage was undisputed or the underlying claim had already been found to be covered and subject to the insurer's duty to indemnify. (*See* DE 93 at p. 5.)

1024014\307562214.V1

it failed to carry, to apportion damages and show that the settlement, or portions thereof, represented costs that fell within the coverage provisions of the policy.").

Here, the Policy affords coverage to KBO, if at all, "only with respect to liability caused, in whole or in part, by [Branco Lath's] performance of [Branco Lath's] work for [KBO]" and only for property damages occurring between October 11 and December 14, 2011.  (DE 42-11 at pp. 22, 34.)  There are disputed issues of fact about whether Branco Lath's work on the Project caused any property damage, when that property damage, if any, occurred, and whether Branco Lath's work was performed for KBO at all.  (*See* DE 86 at p. 9.)  Of the 53 homes that are the subject of the settlement payments, the publicly-available permits and deeds show that only one was built and developed by KBO (the remainder were built by KBGC), and some were not constructed until after the Policy expired.  (*See* property records attached as **Composite Exhibit "G."**)[10] These facts establish that KBO failed to demonstrate coverage.  KBO also failed to allocate.  There is no indication what portion of the payments were made to resolve damages that occurred outside the Policy or for *direct* claims against the KB Defendants for their own negligence, building code violations, and deceptive and unfair trade practices.  That the settlements resolved these uncovered claims

---

[10] The Court may take judicial notice of these records.  *See, e.g., Mims Invs., LLC v. Mosaic Fertilizer, LLC v. Mosaic Fertilizer, LLC*, No. 8:11-cv-1093, 2013 U.S. Dist. LEXIS 199358, *4 (M.D. Fla. July 17, 2013).

1024014\307562214.V1

is evident in the agreements and the notice of dismissal. (*See* Ex. F; Dismissal, attached as **Exhibit "H"**.) "[KBO] cannot recover under the [P]olicy because of [its] failure to allocate the lump sum settlement [payments] between covered and non-covered losses." *Horn*, 391 F. Supp at 1165. These issues preclude the entry of judgment for the indemnity payments.

### D.    Prejudgment Interest

The purpose of prejudgment intertest "is to fully compensate the wronged party for being deprived of the use of [its] money," and the court "has the sound discretion to award or not award prejudgment interest." *KJ Chiropractic*, 2017 U.S. LEXIS 228374 at *7. Since payments were made by a nonparty, the Court should not award prejudgment interest. *See, e.g. id.* at *8 ("To avoid such a windfall, the Court exercises its discretion to deny . . . prejudgment interest."). Even if this Court awards interest, such interest can only be awarded for reasonable fees and covered damages and even then only upon payment. *Apple Glen Inv., LP v. Express Scripts, Inc.*, No. 8:14-cv-1527, 2016 U.S. Dist. LEXIS 121162, *4 (M.D. Fla. Sept. 8, 2016).

### CONCLUSION

The Court should deny KBO's Motion or enter an award consistent with this Opposition.

20

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2021, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

/s/ *Ronald L. Kammer*
**RONALD L. KAMMER**
Florida Bar No. 360589
HINSHAW & CULBERTSON LLP
2525 Ponce de Leon Blvd., 4th Floor
Coral Gables, FL 33134
Telephone: 305-358-7747
Facsimile: 305-577-1063
rkammer@hinshawlaw.com

21

1024014\307562214.V1