UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

KB HOME ORLANDO LLC,

        Plaintiff,

v.                               Case No: 6:19-cv-1573-RBD-EJK

MID-CONTINENT CASUALTY
COMPANY,

        Defendant.

## REPORT AND RECOMMENDATION

This cause comes before the Court on Plaintiff KB Home Orlando LLC's ("KB Orlando") Motion for Damages and Prejudgment Interest (the "Motion"). (Docs. 93, 111.) Defendant Mid-Continent Casualty Company ("MCC") has responded in opposition. (Doc. 104.) Upon consideration, I respectfully recommend that the Motion be granted in part and denied in part.

## I. BACKGROUND

### A. Procedural Setting

On November 12, 2020, the Court ruled in favor of KB Orlando on summary judgment, finding that MCC had a duty to defend KB Orlando in the underlying lawsuit, referred to as the Bayberry Lawsuit. (Doc. 86 at 14.) The Court then directed Plaintiff to file briefing on the issue of damages. (*Id.*) KB Orlando subsequently filed the instant Motion, seeking as damages: (1) attorneys' fees and costs paid to their legal counsel to defend against the Bayberry Lawsuit; (2) costs and expenses incurred in the

Bayberry Lawsuit paid directly to a litigation vendor and expert; and (3) amounts KB
Orlando paid to settle the Bayberry Lawsuit. (Doc. 93.) Upon the undersigned's
request, KB Orlando subsequently filed with the Court: (1) copies of the invoices for
all attorneys' fees, expenses, and costs that KB Orlando seeks in the Motion, and (2)
proof of KB Orlando's payments of the invoices.

### B.    Factual Background

With this procedural background in mind, the facts relevant to the instant
Motion are as follows.[1] After MCC declined to defend KB Orlando in the Bayberry
Lawsuit brought by the Bayberry Lakes Homeowners Association, Inc. ("the
Association") and 57 individual homeowners against KB Orlando and others, KB
Orlando retained its longtime Florida counsel, Carlton Fields, P.A. (Doc. 93 at 2.) The
firm has represented KB Orlando since 2005 and is well-versed in KB Orlando's
business. (*Id.*) Additionally, Carlton Fields had the requisite resources to defend
against the putative class action lawsuit against KB Orlando. (*Id.*) Over the next two
years, Carlton Fields litigated the Bayberry Lawsuit, in both state and federal court.
(*Id.* at 3 (citing Case No. 6:18-cv-72-ORL-41GJK (M.D. Fla.)).) Ultimately, after
protracted litigation and weighing the risk of further litigation and adverse results at
trial, KB Orlando decided to settle the Bayberry Lawsuit. (*Id.*) The settlement was
effected through two written settlement agreements—one with the Association and
one with the individual homeowners. (*Id.*) KB Orlando paid the Association

---

[1] A full recitation of the facts of this case can be found in the Court's summary
judgment order. (Doc. 86 at 1–4.)

settlement on September 22, 2020, and the homeowner settlement on October 2, 2020. (*Id.*)

KB Orlando now seeks damages from MCC as follows: $1,145,656.12 in attorneys' fees, expenses, and costs to defend against the Bayberry Lawsuit, $57,500 to settle the Association's claims, and $1,102,500 to settle the homeowners' claims, for total damages of $2,305,656.12. (*Id.* at 3–4.) KB Orlando also seeks prejudgment interest. (*Id.* at 4.)

## II.    DISCUSSION

The Court held on summary judgment that MCC had a duty to defend KB Orlando in the Bayberry Lawsuit; MCC breached its duty by refusing to defend KB Orlando, and in doing so, MCC forfeited any right to control KBO's defense; and MCC is jointly and severally liable for damages resulting from its breach. (Doc. 86 at 11–13.) MCC opposes the fees KB Orlando seeks on a number of grounds, each of which is addressed below.

### A. MCC's Argument That the Motion Lacks Evidentiary Support

First, MCC argues that KB Orlando's Motion lacks evidentiary support. (Doc. 104 at 3.) MCC took issue with the table summaries KB Orlando provided to the Court to supports its request for damages. (*Id.*); (*see* Doc. 93-1.) To address the issue, the undersigned directed KB Orlando to file (1) copies of the invoices for all attorneys' fees, expenses, and costs that KB Orlando sought in the Motion, and (2) proof of KB Orlando's payments of the invoices (Doc. 110), which KB Orlando did (Doc. 111). All of the documents KB Orlando filed were previously produced by KB Orlando to MCC

in this case. (*See* Doc. 111 at 1 n.2; 2 n.3 & 4; 3 n.5 & 6.) Therefore, the undersigned recommends that these records constitute adequate evidentiary support for the Motion.

MCC then contends that the payments made in the Bayberry Lawsuit were not paid by KB Orlando, but rather, by another entity not a party to this action—its parent company.[2] (Doc. 104 at 4.) MCC argues that KB Orlando cannot recover as damages fees paid by an entity other than KB Orlando because KB Orlando would lack standing to do so. (*Id.*) MCC cites to KB Orlando's discovery responses (Doc. 104-1 at No. 12) and deposition testimony (Doc. 72-1 at 148:14–18) in support of its proposition, but these records fail to demonstrate that KB Orlando did not pay its own invoices for the attorneys' fees sought here. Moreover, even if KB Orlando's parent company, KB Home, was the entity that paid KB Orlando's legal bills, that does not negate KB Orlando's entitlement to damages in this duty to defend case if KB Home does not maintain accounts at the division level. (*See* Doc. 111-7; Doc. 72-1 at 148:14–18.) Therefore, the undersigned is not convinced that KB Orlando did not suffer injury here and recommends that the Court reject this argument.

---

[2] The Court addresses MCC's argument that much of the attorneys' fees KB Orlando seeks in this case were also paid on behalf of KB Orlando's co-defendants in the Bayberry Lawsuit *infra*.

## B. Attorney's Fees, Expenses and Costs Paid to Carlton Fields

KBO paid a total of $1,145,656.12 in attorneys' fees, expenses, and costs to defend against the Bayberry Lawsuit. (Doc. 93 at 3–4; Doc. 93-1 (summary of damages).) In general, "If the insurer breaches its duty to defend, it—like any other party who fails to perform its contractual obligations—becomes liable for all damages naturally flowing from the breach." *Carrousel Concessions, Inc. v. Fla. Ins. Guar. Ass'n*, 483 So. 2d 513, 516 (Fla. 3d DCA 1986). Consequently, KB Orlando "is entitled to recover all reasonable costs and attorneys' fees incurred." *Id.* at 517. But MCC argues that KB Orlando's damages should be reduced for the following reasons.

### 1. Pre-Tender Fees

Here, MCC seeks to exclude 5 invoices, dated November 15, 2017, through February 18, 2018, that amount to $54,238.83 of attorneys' fees and $421.32 of expenses and costs. (*See* Doc. 93-1.) MCC asserts that these should not be allowed because they were incurred *prior* to KB Orlando's tender to MCC on February 28, 2018. (Doc. 104 at 5–8; s*ee* Doc. 64-16.) On that date, KB Orlando provided copies of the complaint and amended complaint in the Bayberry Lawsuit to MCC. (Doc. 64-16.) KB Orlando argues that it should recover these amounts since MCC had knowledge of the homeowners' claims to KB Orlando as early as August 29, 2017, although those claims had not yet resulted in the Bayberry Lawsuit. (Doc. 93 at 13.) As KB Orlando puts it, "MCC was aware of claims involving the Project at least three months before the Bayberry Lawsuit was first filed." (Doc. 93 at 13.) KB Orlando responds that those notices did not concern claims against KB Orlando. (Doc. 104-2.)

KB Orlando does not point to any particular provision of the Policy that would require MCC to reimburse KB Orlando for pre-tender fees. And the Eleventh Circuit has not decided the "broader question" of whether Florida law requires an insurer to pay pre-tender defense costs when the policy is silent thereon. *EmbroidMe.com, Inc. v. Travelers Prop. Cas. Co. of Am.*, 845 F.3d 1099, 1106 n.4 (11th Cir. 2017).

MCC, on the other hand, argues that the Policy's stated duty to defend is triggered by a "suit." (Doc. 104 at 4; Doc. 86 at 3 (citing Doc. 64-11 at 34).) The Bayberry Lawsuit was filed on November 22, 2017. (*See* Doc. 64-16.) Thus, MCC's duty to defend was triggered on November 22, 2017. The undersigned does not find that KB Orlando's expenses in defending itself between the date the suit was filed to the date of its tender letter to MCC on February 28, 2018, are unreasonable in amount or somehow prejudiced MCC, nor does MCC make that argument. *See EmbroidMe.com,* 845 F.3d at 1115; (Doc. 64-16).

Therefore, the undersigned will recommend that the District Court exclude only the invoice dated November 15, 2017, the only invoice issued pre-suit, which amounts to $6,762.20 in attorneys' fees and $21.32 in costs. (*See* Doc. 93-1.) The undersigned recommends that the other invoices dated on or after December 1, 2017 be awarded to KB Orlando. (*Id.*)

### 2. Post-Exhaustion Fees

Next, MCC argues that the Court should exclude $98,155.26 of attorneys' fees and $9,062.04 of expenses and costs, as these amounts were incurred after April 10, 2020, when MCC asserts that the applicable policy was exhausted. (Doc. 104 at 8.)

The undersigned previously denied MCC's motion to amend its affirmative defenses to add an exhaustion defense. (Doc. 109.) Since MCC has not asserted such a defense, the undersigned does not consider this argument further. Therefore, the undersigned recommends that these fee amounts be included in the damage award.

### 3. Alleged Billing Improprieties

MCC argues that the Court should make a 30% reduction for billing improprieties. (Doc. 104 at 9–11.) MCC contends that the Carlton Fields's bills are full of "commercially and objectively unreasonably billing practices that pervade the Bayberry Lawsuit invoices," including "extraordinary volumes of completely duplicative billing entries for months on end, entries reflecting excessive interoffice communications without differentiation, entries reflecting enormous amounts of vague block-billing, and entries reflecting grossly excessive time devoted to tasks." (Doc. 104 at 10–11.) KB Orlando asserts that MCC is not entitled to argue that its attorneys' fees be reduced because of MCC's contractual obligation to defend it, and thus, pay *all* attorneys' fees flowing from that breach. (Doc. 93 at 10.)

"The law is well established that when an insurer unjustifiably refuses to defend its insured, the insurer is liable to the insured for the *reasonable* attorney's fees and other expenses incurred in defending the action brought by the third party." *Fla. Ins. Guar. Ass'n, Inc. v. All The Way With Bill Vernay, Inc.,* 864 So. 2d 1126, 1129 (Fla. 2d DCA 2003) (emphasis added); *but see BellSouth Telecomms., Inc. v. Church & Tower of Fla., Inc.*, 930 So. 2d 668, 670-–71 (Fla. Dist. Ct. App. 2006) ("[If an insurer] refuses to defend … and if it is later determined that the insured was entitled to coverage, the insured

will be entitled to full reimbursement of the insured's litigation costs.")

The undersigned finds it prudent and appropriate under Florida law to review KB Orlando's bills for attorneys' fees for reasonableness. (Docs. 111-1, -2, -3.) In general, MCC does not object to the rate the Carlton Fields attorneys seek, just the amount of hours they expended. (*See* Doc. 104 at 9–11; Doc. 104-4 at 9–10.) Therefore, the undersigned focuses on the amount of time KB Orlando states was required to defend the Bayberry Lawsuit.

As for the hours reasonably expended, counsel must exercise proper "billing judgment" and exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). In demonstrating that their hours are reasonable, counsel "should have maintained records to show the time spent on the different claims, and the general subject matter of the time expenditures ought to be set out with sufficient particularity so the district court can assess the time claimed for each activity." *Norman v. Housing Auth. of the City of Montgomery*, 836 F.2d 1292, 1303 (11th Cir. 1988).

Likewise, a party opposing a fee application should submit objections and proof that are specific and reasonably precise. *ACLU of Ga. v. Barnes*, 168 F.3d 423, 428 (11th Cir. 1999). A fee opponent's failure to explain with specificity the particular hours he or she views as excessive, redundant, or otherwise unnecessary is generally fatal. *Scelta v. Delicatessen Support Servs.*, Inc., 203 F. Supp. 2d 1328, 1333 (M.D. Fla. 2002) (citing *Gray v. Lockheed Aeronautical Sys. Co.*, 125 F.3d 1387 (11th Cir. 1997)). "If fee applicants do not exercise billing judgment, courts are obligated to do it for them, to cut the

- 8 -

amount of hours for which payment is sought, pruning out those that are excessive, redundant, or otherwise unnecessary." *Barnes*, 168 F.3d at 428 (internal quotation marks omitted). When a court finds the number of hours billed to be unreasonably high, it has two choices: it may review each entry and deduct the unreasonable time, or it may reduce the number of hours by an across-the-board cut. *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008).

While expert discovery on damages in this case was stayed (*see* Doc. 48), the parties each submitted an affidavit in support of their respective positions on the Motion. KB Orlando submitted the affidavit of Michael Gay, a partner with the Orlando office of Foley and Lardner. (Doc. 93-2.) He opined that the attorney fee amount of $940,571.25 is reasonable in this matter. (*Id.* at 19.) MCC submitted the statement of Fredric S. Zinober, who is a partner with Zinober Diana & Monteverde. (Doc. 104-4.) Mr. Zinober noted a number of issues with the bills, including: vague and unclear block billing, duplicative billing for intraoffice dialogue, excessive activity such as "reviewing" and "strategizing" that did not advance the case, repetitive entries, and excessive time spent on particular tasks. (*Id.* at 13–17.) The undersigned addresses each in turn.

Block billing refers to the practice of including multiple tasks in a single time entry and a reduction for this type of billing is acceptable. *Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1377–78 (M.D. Fla. 2010). After reviewing KB Orlando's bills, the undersigned believes that the vast majority of these time entries may be

meaningfully reviewed for reasonableness despite the arguable use of block billing in some entries. Therefore, I do not find that a reduction for block billing is warranted.

Hours that are redundant must be excluded from an award of attorneys' fees. *Hensley*, 461 U.S. at 434. Having reviewed the bills that MCC asserts contain duplicative effort, the undersigned finds that there was a notable amount of intraoffice conferencing (*see* Doc. 105-2, Exs. A, B), but that the participation of multiple attorneys in a matter such as this was not unreasonable or excessive given the nature of complex litigation such as this. Therefore, the undersigned does not recommend a reduction in hours for duplicative work or for entries for "reviewing," "strategizing," and the like.

Similarly, hours that are repetitive, to the extent they are redundant, should also be excluded. *See Hensley*, 461 U.S. at 434. MCC includes an analysis of hours it asserts are "entirely repetitive," for entries made by associate Brian Porter. (*See* Doc. 105-2, Ex. C.) However, simply because these time entries are identical or repetitive does not necessarily mean that the work listed was redundant, nor does MCC articulate an argument to that effect. As any attorney familiar with the operation of large law firms would know, associates on a case often perform repetitive tasks, but the work itself is still meaningful and not redundant. Therefore, I do not find that a reduction for redundant time entries is warranted for Mr. Porter's work.

Lastly, MCC asserts that some attorneys on the file billed an inordinate amount of time for work on particular tasks. Specifically, MCC notes that attorney E. Kelly Bittick spent 93.5 hours working on a *Daubert* motion, including a total of 68.9 hours

drafting the motion. (Doc. 105-2, Ex. D.) MCC argues that this amount should be reduced, since KB Orlando's own expert, Mr. Gay, opined that 60 to 80 hours in total for all *Daubert* related work is appropriate. (Doc. 105-2 at 16; Doc. 93-2 at 12.) Because Mr. Bittick's hours are in excess of what KB Orlando's own expert opines would be reasonable, the undersigned recommends that the Mr. Bittick's work on the *Daubert* motion should be reduced from 93.5 hours to 60 hours, for a total fee reduction of $12,227.50 ($365 hourly rate[3] x 33.5 hour reduction).

### 4.  Co-Defendant Fees

Next, MCC argues that the Court must exclude attorney's fees, expenses, and costs that were incurred in connection with the amounts paid to Carlton Fields to represent the other six KBO Defendants in the Bayberry Lawsuit. (Doc. 104 at 11–12.) MCC demonstrates this by pointing out that the invoices are all captioned "Re: KB HOME Orlando, LLC, KB HOME Jacksonville, LLC, KB HOME Gold Coast LLC, Bayberry Lakes Homeowners, Class Representation." (*Id.* at 12.)

MCC's expert proposes three options to accommodate for the fact that other co-defendants were present in the lawsuit whom MCC did not have a duty to defend: (1) reduce the sums by six-sevenths to reflect that only one of the seven KB Defendants is MCC's insured; (2) reduce the sums by two-thirds since the invoices facially refer to the representation of KB Orlando, KB Home Gold Coast, LLC, and KB Home Jacksonville, LLC; or (3) reduce the sums by 46.55% to reflect that, according to the

---

[3] This hourly rate was taken from Exhibit A of Mr. Gay's affidavit. (*See* Doc. 93-2 at 21.)

Bayberry Lawsuit pleadings that control MCC's defense obligations, KBO was only involved in the development and construction of 147 of the 275 homes at issue. (Doc. 104 at 14.)

The undersigned agrees that the fees, expenses, and costs in this case should be reduced, to some extent, to account for the fact that MCC had a duty to defend only KB Orlando. However, the billing records generally do not make apparent what work was done for which client. This is not necessarily wrong, since Carlton Fields was defending several co-defendants in one action and one would not expect billing entries to be made per party under those circumstances.

Further, it does not appear that KB Orlando has provided a response as to how to address this issue. It is reasonable to assume that some of the work Carlton Fields did on behalf of KB Orlando was common to each of the KB Home entities it represented. However, KB Orlando is not entitled to a windfall for payment of the entire cost of defense for entities that MCC had no duty to defend. Therefore, in order to compensate for work common to the defendants, but to credit MCC for money it would not have been required to pay on behalf of KB Orlando's co-defendants, the undersigned recommends that the attorneys' fees be reduced by 46.55%.

### C. Amounts Paid to Settle the Bayberry Lawsuit

Under the agreements negotiated between KB Orlando and the Bayberry Lawsuit's Plaintiffs' counsel, KB Orlando paid $57,500 to the Association and $1,102,500 to 53 homeowners to resolve the Bayberry Lawsuit (collectively, the "Settlement Amounts"). (*See* Doc. 93-1) (summary chart).)

MCC's main contention[4] is that it is not required to pay KB Orlando for the Settlement Amounts because indemnity was not an issue in this action. MCC is correct that KB Orlando did not allege a claim regarding breach of a duty to indemnify. (*See* Doc. 42.) Thus, MCC argues that KB Orlando's claim to these damages ignores the distinction between damages recoverable for a breach of the duty to defend and those recoverable for breach of the duty to indemnify. (Doc. 104 at 15.)

KB Orlando, however, asserts that, by improperly refusing to defend KBO, MCC abandoned any right to control the defense and settlement of the Bayberry Lawsuit, leaving KBO to take whatever steps were necessary to protect itself. (Doc. 86 at 11–13.) This included choosing to settle the case. (*Id.*) The undersigned does not find that the law leads to such a conclusion.

KB Orlando cites a string of both federal and Florida state court cases, urging the Court to conclude that MCC is liable for the Settlement Amounts in this duty to defend case. (Doc. 93 at 5–6.) KB Orlando states that "[t]he damages incurred by the insured in settling or litigating the case are not limited solely to attorney's fees because the insurer becomes liable for all damages that flow naturally from the breach." *MCO Env't, Inc. v. Agric. Excess & Surplus Ins. Co.*, 689 So. 2d 1114, 1116 (Fla. Dist. Ct. App.

---

[4] MCC also again argues that it should not be required to pay the Settlement Amounts, first, because a corporate parent of Plaintiff, "KB Home," made these payments. (Doc. 104 at 15) (citing (Doc. 105-3) (attaching settlement checks).) The undersigned has addressed this issue *supra*. MCC also argues these payments cannot be recovered because the policy was exhausted. (Doc. 104 at 15.) But as the undersigned also noted *supra*, MCC has not pleaded an exhaustion defense. (*See* Doc. 109.)

1997). KB Orlando says the Settlement Amounts are collateral damages that it is entitled to recover. *Id.*

But a review of those cases does not persuade the undersigned that KB Orlando's assertion compels that result. "[I]t is well-settled under Florida law that an insurer's duty to defend an insured is separate and distinct from the question whether it has a duty to indemnify the latter against the imposition of damages." *EmbroidMe.com*, 845 F.3d at 1107. "An insurer is required to indemnify its insured only for that conduct or occurrence that is covered by the policy." *Id.* So "an insurer may be required to defend its insured even though it might ultimately turn out that it is not actually responsible for indemnifying the insured for the damages awarded on the claim that originally triggered the duty to defend." *Id.* KB Orlando has not directed the undersigned to a case that is directly on point that would contradict the above cited authority.

Here, there has been no determination that MCC was required to indemnify KB Orlando under the applicable policy—only that MCC had a duty to defend. Therefore, the undersigned recommends that the Court decline to award KB Orlando the Settlement Amounts.

**D. Final Calculation**

In total, KB Orlando seeks $940,571.26 in attorneys' fees. (*See* Doc. 93-1.) If the Court accepts the undersigned's recommendation, the fee award would be reduced by $6,762.20 for invoices paid prior to tender and $12,227.50 for hours billed by Mr. Bittick for working on the *Daubert* motion, to a total of $921,581.56. That fee would

then be further reduced by 46.55% to accommodate MCC's duty to defend only KB Orlando, for a total fee award of **$492,585.34.**

As for expenses and costs, KB Orlando seeks $205,084.86. (*See* Doc. 93-1.) To the extent MCC challenged any of KB Orlando's costs individually, the undersigned recommends that this amount be reduced only by $21.32 for costs made pre-tender, resulting in a total of $205,063.54. That fee would then be further reduced by 46.55% to accommodate for MCC's duty to defend only KB Orlando, for a total cost and expense award of **$109,606.46.**

### E. Prejudgment Interest

As recognized by the Court, KBO is entitled to recover prejudgment interest on its damages. (Doc. 86 at 13.) KB Orlando provided the Court with a calculation of its pre-judgment interest claim. (Docs. 93 at 15–17; 93-3). However, because the undersigned does not recommend that the Court award all of the damages KB Orlando sought, if the Court were to adopt the Report & Recommendation, this calculation would need to be adjusted. Therefore, the undersigned recommends that the Court award prejudgment interest on the final amount it determines to be awardable to KB Orlando.

### III.   RECOMMEDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1.   **GRANT IN PART** and **DENY IN PART** Plaintiff KB Home Orlando LLC's

Motion for Damages and Prejudgment Interest (Doc. 93) and **AWARD**
Plaintiff:

    a.  **$602,191.80** in attorneys' fees, expenses, and costs to defend against the
        Bayberry Lawsuit; and

    b.  prejudgment interest thereon.

2.  **DIRECT** the Clerk of Court to enter judgment accordingly and **CLOSE** the
    case.

## NOTICE TO PARTIES

A party has **fourteen days** from this date to file written objections to the Report
and Recommendation's factual findings and legal conclusions. A party's failure to file
written objections waives that party's right to challenge on appeal any unobjected-to
factual finding or legal conclusion the district judge adopts from the Report and
Recommendation. *See* 11th Cir. R. 3-1.

Recommended in Orlando, Florida on September 1, 2021.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record

- 16 -