UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**KB HOME ORLANDO LLC,**

      Plaintiff,

v.                          Case No: 6:19-cv-1573-RBD-EJK

**MID-CONTINENT CASUALTY COMPANY,**

      Defendant.

## REPORT AND RECOMMENDATION

This cause comes before the Court on Plaintiff KB Home Orlando LLC's ("KBO") Motion for Damages and Prejudgment Interest (the "Motion") (Doc. 93) and Response to Court's Order ("Supplemental Briefing") (Doc. 125), filed December 23, 2020, and January 10, 2022, respectively. Defendant Mid-Continent Casualty Company ("MCC") has responded in opposition. (Docs. 104, 126.) Upon consideration of the supplemental briefings, I respectfully recommend that the Motion be granted in part and denied in part.

**I.   BACKGROUND**

The Court previously found at summary judgment that MCC, an insurer, had a duty to defend KBO, a construction company, in an underlying lawsuit (the "Suit"). (Doc. 86 at 14.) KBO then filed a motion seeking $1,145,656.12 in attorneys' fees, expenses, and costs to defend against the Suit. (Doc. 93.) The undersigned recommended that the Court grant the motion in part and reduce the fees to

$602,191.80. (Doc. 115 at 15–16.) KBO objected to several portions of the R&R, and MCC responded. (Docs. 116, 117.) Specifically, KBO objected to the reduction of hours for work performed for certain entities named as co-defendants in the underlying action that MCC had no duty to defend. (Doc. 115 at 11–12; *see generally* Doc. 64-10.) The billing records generally did not make apparent what work was done for which client. (*See* Doc. 115 at 12.) Thus, to offset the fees and costs attributable to these entities, the undersigned recommended calculating total fees based on the number of homes constructed by KBO. (Doc. 115 at 12.) KBO constructed 147 of the 275 homes at issue. (Doc. 104 at 14.) Therefore, the undersigned recommended that the attorneys' fees be reduced by 46.55%. (Doc. 115 at 12.)

On review, the Court found that the issue of reducing the fees based on the co-defendants was not properly briefed by the parties. (Doc. 124 at 5.) Accordingly, the Court adopted the recommendation in part and remanded the issue of whether the fees should be reduced to account for work performed for the co-defendants in the Suit that MCC had no duty to defend. (*Id.* at 4–7.) In the Court's remand, Judge Dalton noted that:

> Plaintiff should submit evidence regarding the nature and extent of the relationship between Plaintiff and the other co-defendants in the Suit, along with justification for the proposition that a fee reduction for billings attributable to unnamed co-defendants is unwarranted. Billing records showing any differentiation or apportionment between work done for Plaintiff versus work done for the co-defendants and who paid those bills, along with court records (such as motion practice) or other evidence that shows whether the work performed was on behalf of Plaintiff only or on behalf of all co-defendants, should be submitted and assessed in determining whether a reduction is fair.

(*Id.* at 7.) Thereafter, KBO and MCC both filed supplemental briefings for consideration. (Docs. 125, 126.) Accordingly, the issue is now ripe for review.

## II. DISCUSSION

### A. The Nature and Extent of the Relationship Between KBO and Its Co-Defendants in the Suit

KBO first asserts that the fees should not be reduced because the litigation in the Suit focused on issues of class certification and standing, and each defendant was treated jointly and severally. (Doc. 125 at 7–11.) Specifically, KBO contends that the plaintiffs in the Suit did not distinguish between defendants and treated them similarly because the plaintiffs generally alleged that "the homes in the project were built by the Defendants," that the plaintiffs called defendants "a conglomerate of business entities" that "represented themselves out to the public as one and the same," and that the individual defendants served as contractors and agents on behalf of the corporate defendants. (*Id.* at 8.) KBO also contends that the plaintiffs' allegations made no distinctions between the defendants or the homes in the project, and that each count was asserted against either all defendants or all of the corporate defendants. (*Id.*)

On review of the record presented by KBO, the undersigned agrees that plaintiffs generally treated KBO and its co-defendants jointly. For example, the plaintiffs repeatedly noted that they were intentionally not distinguishing among the defendants in the Amended Complaint because they "[sought] to hold the Corporate and Individual Defendants both equally liable and jointly and severally liable for constructing the defective Homes." (Doc. 125-9 at 16.) Similarly, the motion for class

certification focused on the commonality of the claims against all defendants, and discovery conducted by plaintiffs contained identical document requests and information from each defendant. (*See* Docs. 125-10 at 4, 16, 23; 125-16 at 10 n.1 (noting that the requests to each defendant were the same)). Notably, MCC does not appear to contest[1] that the defendants were treated jointly and severally (*see* Doc. 126.)

Accordingly, I find that this factor weighs in favor of awarding the full amount of KBO's requested fees.

### B. Billing Records

#### i. Payment of Invoices Issued by Carlton Fields.

The Court requested that KBO provide additional briefing and evidence demonstrating who paid the invoices issued by Carlton Fields, the law firm that represented the defendants in the Suit. (Doc. 124 at 7.) However, KBO has failed to provide this information. (*See* Doc. 125.) Nevertheless, the Supplemental Briefing does assert that KBO's accounting is handled on a regional basis and that KBO Home is the sole member/manager of KB Home Florida LLC, which is the sole member/manager for KBO. (*Id.* at 2 n.2.) Similarly, the accounting for the other corporate defendants, KB HOME Gold Coast LLC ("KBGC") and KB HOME Jacksonville LLC ("KBJ"), is handled on a regional basis and there are no specific accounts for each corporate defendant. (*Id.*) Furthermore, the individual defendants

---

[1] While MCC does not contest that the litigation was positioned as a class action, it argues instead that the factor is undermined because KBO did not pay the invoices issued by Carlton Fields. (Doc. 126 at 10.) The undersigned addresses this *infra* Section II(C).

"are current or former employees who have served as 'primary qualifying agents' for one or more of the Corporate Defendants." (*Id.*)

Based on these assertions and a review of the record, it appears that KB Home is the entity that paid the invoices for the defense of all the defendants, and KBO did not pay its own invoices directly. (*See* Docs. 111-1 at 4 (invoices issued to KB Home); 111-5 (system report generated by Carlton Fields showing that the bills for the Suit were paid by client KBO Home); 111-7 (checks and associated check stubs reflecting proof of payment of the invoices by KBO Home).) Therefore, because the parent entity, KB Home, paid the invoices rather than KBO itself, this factor weighs against awarding the full amount of fees.

### ii. Differentiation or Apportionment Between Work Done for Plaintiff Versus Work Done for the Co-Defendants.

KBO argues that the work performed by the attorneys in the Suit "overlapped to a great degree" such that a reduction in its recovery would unfairly benefit MCC because all of the fees claimed by KBO were for work that benefitted KBO. (Doc. 125 at 11–15.) In support of this argument, KBO states that its lead attorney "understood KBO to be the primary defendant in the [Suit] and litigated the case accordingly." (*Id.* at 12.) Further, KBO argues that it was identified as the lead party in the corporate defendants' third-party complaint and that KBO issued all of the discovery requests that were served on the plaintiffs. (*Id.*)

On review of the record presented, it does appear that the work performed by Carlton Fields for KBO overlapped with the work performed for the co-defendants.

- 5 -

For example, because the discovery requests served by the plaintiffs were identical, the corporate defendants' responses contained identical objections and agreements to produce, and the individual defendants' responses contained the same objections but deferred to the corporate defendants on each request or stated that they had no documents. (*See* Doc. 125-30.) Additionally, Michael Walls ("Walls"), one of the lead attorneys in the Suit, attested that the written responses were first drafted on behalf of KBO and then copied for the remaining defendants. (Doc. 125-7 ¶ 57.) Indeed, this is evidenced by Carlton Fields's failure to replace KBO with the other corporate defendants' names in some of the responses. (*Id.*; Doc. 125-30 at 25, 42.) Furthermore, as Walls noted in his declaration, almost all filings in the Suit were filed on behalf of all the defendants or all the corporate defendants, except for the two affirmative defenses filed on behalf of the individual defendants. (Doc. 125-7 ¶¶ 49, 54.)

However, the undersigned agrees with neither KBO's attempts to assert that the time spent copying the responses for the individual defendants was de minimis, nor KBO's assertion that "*all* of the damages claimed by KBO benefitted its defense of the [Suit]." (Doc. 125 at 11, 13 (emphasis added).) MCC has identified at least 89 time entries[2] that identify work relating to discovery requests and various other tasks that

---

[2] As noted in the prior Report and Recommendation, the billing records "*generally* do not make apparent what work was done for which client" because Carlton Fields was "defending several co-defendants in one action" and the entries were not made "per party." (Doc. 115 at 12 (emphasis added).) Furthermore, while it is possible to identify some work done solely on behalf of the co-defendants, as MCC has noted, the time entries are block billing entries where several tasks are performed and accorded one total time, thus making it impossible to know specifically what portion

seemingly do not benefit KBO, but rather its co-defendants. (Docs. 126 at 15; 126-1; s*ee, e.g.*, Docs. 111-1 at 26 (6.0 hours of work in part, for follow-up regarding individual defendants, follow up with engagement agreements with individual defendants, and review and correspondence regarding the same); 111-3 at 113 (1.5 hours of work in part, for reviewing offer of judgment served upon KBGC).)

Additionally, KBO Home retained Carlton Fields for the defense of seven co-defendants and KBO. Thus, it appears Carlton Fields issued the invoices to KBO Home, rather than to each defendant separately. (*See* Docs. 111-1 at 4 (invoices issued to KB Home).) This resulted in block billing records that largely do not identify the party for whom the work was performed and that often contain ambiguous entries that simply refer to "KB" or "KB Home," or no specific defendant at all. (*See, e.g.*, Doc. 111-1.) As MCC correctly notes, these circumstances support an across-the-board reduction where "it is difficult, if not impossible, to determine what portion of the work was done" solely for the co-defendants. *Wickboldt v. Massachusetts Mut. Life Ins. Co.*, No. 6-17-cv-2208-Orl-28EJK, 2020 WL 11272877, at *3 (M.D. Fla. Dec. 7, 2020), *report and recommendation adopted*, No. 6-17-cv-2208-Orl-28EJK, 2020 WL 11272874 (M.D. Fla. Dec. 23, 2020) (recommending an across the board cut for attorneys' fees to compensate for overinclusion of time not recoverable by plaintiff).

---

of time was spent on each separate task. (*See, e.g.*, Docs. 111-1 at 151 (4.7 total hours for: work with co-defendant Glance; correspondence with opposing counsel; reviewing client documents and expert reports; planning and prepare for with preparation; corresponding with expert witness; and more).)

Therefore, while the undersigned acknowledges that a large portion of the work overlapped between the defendants in the Suit, there are numerous instances in which it is clear that KBO is seeking fees for work that solely benefitted the co-defendants. As previously found, it would be unreasonable for MCC to reimburse KBO for work done on behalf of co-defendants that it did not have a duty to defend. Accordingly, I find that this factor weighs against awarding the full amount of fees requested by KBO.

### C. Precedent on Fee Reductions for Billings Attributable to Unnamed Co-Defendants

As the parties both note, Florida courts have not addressed the issue of whether an insurer is liable for amounts incurred by its insured that also benefitted a co-defendant. (Docs. 125 at 5; 126 at 6, 10.) To this extent, both parties have submitted non-binding precedent for the Court's consideration.

KBO cites a line of cases[3] arguing that it "need only make a prima facie showing that the amounts incurred inured to its benefit; MCC then bears the burden of proving that specific amounts were incurred solely on behalf of the co-defendants." (Doc. 125 at 7); *Value Wholesale, Inc. v. KB Ins. Co. Ltd.*, No. 18-cv-5887, 2020 WL 6393016, at *7 (E.D.N.Y. Nov. 2, 2020) (finding that the insurer was liable for fees

---

[3] KBO also cites to *Rockhill Ins. Co. v. Hoffman-Madison Waterfront, LLC*, 417 F. Supp. 3d 50, 68-69 (D.D.C. 2019) (rejecting insurer's proposed 50% allocation based on vague arguments that it would be "equitable"), to support its position. (Doc. 125 at 7.) However, *Rockhill* concerns an insurer's motion for judgment on the pleadings after it represented the insureds in an action where non-insured co-defendants were added to the suit. *Rockhill*, 417 F. Supp. 3d at 56–58. The insured then sought reimbursement from the co-defendants for fees incurred on their behalf. *Id.* at 67–69. Accordingly, because this matter does not concern the reimbursement of an insurer in a matter it defended, *Rockhill* is inapplicable to the current matter.

incurred for legal work that benefited the insured, or work that benefitted both the insured and its co-defendant jointly) (hereinafter "*Value Wholesale*"); *High Point Design, LLC v. LM Ins. Corp.*, No. 14-cv-7878 (KBF), 2016 WL 426594, at *4 (S.D.N.Y. Feb. 3, 2016) ("[T]he amount that should be allocated to the non-covered parties, and thus not recouped from the insurer, are any 'additional expenses' which would not have occurred but for the inclusion of the non-covered defendants.") (hereinafter "*High Point*"). Based on this, KBO contends that it is entitled to a full recovery because MCC cannot show any amounts that were not incurred on KBO's behalf.

MCC argues that Florida law requires only that KBO be restored to the position it "would have occupied had MCC retained counsel to defend KBO but not KBGC, KBJ, Holder, Spalten, Boeneman, and Glance." (Doc. 126 at 8); *Krause v. Novartis Pharms. Corps.*, 926 F. Supp. 2d 1306, 1310 (N.D. Fla. 2013) ("[I]n Florida, punitive damages are designed to punish the tortfeasor and compensatory damages are designed to make a plaintiff whole.").[4] MCC also submits cases that it contends support a fee reduction.[5] (Doc. 126 at 6); *Lyman Morse Boatbuilding, Inc. v. N. Assur.*

---

[4] *See also Gov't Employees Ins. Co. v. KJ Chiropractic Ctr., LLC*, No. 6:12- cv-1138, 2017 WL 9939048, *2 (M.D. Fla. Aug. 22, 2017) (finding that treble damages should not place the prevailing party "in a better economic position than it would otherwise have occupied"); *Air Caledonie Int'l v. AAR Parts Trading, Inc.*, 315 F. Supp.2d 1319, 1336-37 (S.D. Fla. 2004) ("[a plaintiff] must still prove that it suffered these actual damages before it may be entitled to recover them. Under Florida law, a breach without more only entitles the non-breaching party to nominal damages.").
[5] MCC also submits *Morgan, Lewis & Bockius LLP v. Hanover Ins. Co.*, 929 F. Supp. 764, 771 (D.N.J. 1996), to support its contention. (Doc. 126 at 7.) However, in *Hanover*, the issue before the court was the allocation of fees to an insured for

*Co. of Am.*, No. 2:12-cv-313-DBH, 2014 WL 901445, at *3 (D. Me. Mar. 6, 2014), *rev'd on other grounds*, 772 F. 3d 960 (1st Cir. 2014); *Accord Curtis v. Nutmeg Ins. Co.*, 256 A.D.2d 758 (N.Y. App. Div. 1998) (noting previous ruling that reduced fees charged to insureds for their defense by 33% to account for "services actually rendered to [insureds]."); *Watts Water Techs., Inc. v. Fireman's Fund Ins. Co.*, No. CIV.A. 05-2604-BLS2, 2007 WL 2083769, at *11 (Mass. Super. July 11, 2007) (finding that, in a joint defense with insured and non-insured defendants, the inquiry into the reasonableness of the attorney's fees includes reasonable allocation among the parties looking at "the surrounding circumstances, considering the relative exposure of the parties to liability, the size of the parties, and the parties most benefitting from the joint defense work.").

    The undersigned does not find the cases cited by KBO instructive in this instance, as those cases involved an insured seeking reimbursement from its insurer for fees the insureds themselves paid for their defense when the insurers breached their duties to defend. *Value Wholesale*, 2020 WL 6393016, at *2; *High Point*, 2016 WL 426594, at *2. The critical distinction here is that KBO Home, not KBO, paid the fees incurred by Carlton Fields when MCC breached its duty to defend KBO. And MCC is required to put only KBO in the position it would have occupied if MCC had defended KBO. *See Krause*, 926 F. Supp. 2d at 1310. KBO Home would have paid the cost of the defense for the co-defendants even if MCC had defended KBO. Therefore,

---

defending joint claims, only some of which were covered under the insured's insurance policy. *Hanover*, 929 F. Supp. at 769. Therefore, because this matter concerns the allocation of fees regarding co-defendants rather than joint claims, *Hanover* is inapplicable to the instant case.

to make KBO whole is to make KBO Home whole for the fees it paid on behalf of KBO, and a payment to KBO of all the fees sought would result in a windfall, rather than the nominal damages to which it is entitled to under Florida law. *Air Caledonie Int'l v. AAR Parts Trading, Inc.*, 315 F. Supp. 2d 1319, 1337 (S.D. Fla. 2004).

Furthermore, even if the undersigned were to accept and apply the case law cited by KBO, the undersigned would nevertheless find that MCC has satisfied its burden by identifying "specific amounts [that] were incurred solely on behalf of the co-defendants." (*See* Doc. 126-1.) However, because the billings entries are block billed, it is not possible to separate the exact amount of time spent on any one task; instead, the billing time entries are listed for several tasks. (*See, e.g.*, Docs. 111-1 at 151 (4.7 total hours for: work with co-defendant Glance; correspondence with opposing counsel; reviewing client documents and expert reports; planning and prepare for with preparation; corresponding with expert witness; and more).) While block billing might have been more convenient for KBO and its attorneys, the practice has undermined MCO's and this Court's ability to apportion fees exactly between each co-defendant.

The case law cited by MCC is instructive on this matter. In *Lyman*, a non-covered corporation hired lawyers to defend itself and a principal shareholder after the insurer refused to provide coverage. 2014 WL 901445 at * 1. There, the court found that the "defenses overlapped substantially, albeit not entirely." *Id.* at *3. However, because there was no precise basis upon which to reduce the fees, the court found that based on "[t]he equities of the case," it was appropriate to reduce the fees by 50% so as not to be "unfair" to the insurer and "expand the purchased insurance coverage."

*Id.* at *4.

As this Court noted previously, "the purpose of awarding damages" is to make the prevailing party "whole." (Doc. 124 at 5 n.5 (citing *Krause*, 926 F. Supp. 2d at 1310). It would be unreasonable to allow KBO to recover all the fees it seeks when KBO itself did not pay the invoices issued by Carlton Fields, and MCC has demonstrated that dozens of time entries describe work done solely for the co-defendants. Further, as discussed above, it is not possible to clearly delineate what portion of time was spent on specific tasks for the co-defendants.

Accordingly, the undersigned reaffirms the prior recommendation (Doc. 115 at 12) to reduce the requested fees by 46.55%.

### III.   RECOMMENDATION

Upon consideration of the foregoing, I respectfully recommend that the Court:

1. **GRANT in part** and **DENY in part** Plaintiff KB Home Orlando LLC's Motion for Damages and Prejudgment Interest (Doc. 93).
2. **AWARD** Plaintiff: (a) **$602,191.80** in attorneys' fees, expenses, and costs to defend against the Bayberry Lawsuit; and (b) prejudgment interest thereon.
3. **DIRECT** the Clerk of Court to enter judgment accordingly and CLOSE the case.

## NOTICE TO PARTIES

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

Recommended in Orlando, Florida on May 27, 2022.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE